**Leonard McKIBBON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 878–86.

Court of Criminal Appeals of Texas, En Banc.

April 27, 1988.

Mark Stevens (court appointed on appeal only), San Antonio, for appellant.

Fred G. Rodriguez, Dist. Atty., and Edward F. Shaughnessy, III, Asst. Dist. Atty., San Antonio, Robert Huttash, State's Atty., Austin, for State.

OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

A jury convicted appellant of aggravated robbery and the court assessed punishment at ninety-nine years' confinement in the Texas Department of Corrections. The Fourth Court of Appeals affirmed the conviction upon finding that appellant was not entitled to have a copy of the transcription of his co-defendant's trial provided free of cost. *McKibbon v. State*, 714 S.W.2d 70 (Tex.App. San Antonio—1986). We granted appellant's petition for discretionary review to determine whether the Court of Appeals correctly decided this question of first impression in this state.

The record reflects that two people robbed a clerk at a convenience store in San Antonio. The appellant was identified by the manager of the store as one of the robbers. James Woerner, the co-defendant, was convicted at a previous trial. Appellant asserted the defense of alibi, maintaining the robbery was actually committed by Woerner and one Randy Woodall.

Prior to commencement of trial, appellant's counsel filed "Defendant's Motion for a Transcript of the Record of a Co–Defendant" which avered as follows:

LEONARD McKIBBON, petitions the Court to order the Official Court Reporter of the 227th Judicial District Court, Bexar County, Texas, to provide this Defendant with a transcript of the testimony of the trial proceedings in Cause No. 84–CR–2745, styled the *State of Texas v. James Woerner*, 227th Judicial District Court, Bexar County, Texas, without cost to the said Defendant. In support of this petition Defendant would respectfully show unto the Court the following:

I.

James Woerner, a Co-Defendant of the same alleged criminal episode was tried and convicted in the 227th Judicial District Court on the 19th day of October, 1984.

II.

Physical evidence and testimony adduced in the above-described trial bears directly upon the credibility of identification witnesses to be called by the State to testify in the instant case against Defendant.

III.

The above-described transcript will show that identity testimony to be used in the instant case against Defendant has been tainted by the previous above-described jury trial, and Defendant has no means of demonstrating said defect to this Court except by transcript of the former trial.

IV.

This Defendant is indigent and unable to pay for the services of the Court Reporter.

WHEREFORE, Defendant prays that the Court grant this Motion requiring the Official Court Reporter to transcribe the testimony of the evidence adduced at the above described trial without cost to the defendant.

The trial court denied appellant's motion.

In his sole ground for review, appellant asserts the trial court erred in denying his motion for a cost-free transcription of his co-defendant's trial. It is well settled that an indigent defendant is entitled upon timely request to be furnished without cost, for use at a subsequent trial, a transcription of his earlier mistrial, if it is needed for an effective defense. *Britt v. North Carolina*, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971). We expressly adopted the holding of *Britt*, supra, in the case of *Billie v. State*, 605 S.W.2d 558 (Tex.Cr.App.1980), wherein as follows:

Fundamental fairness requires that these indigent appellants be furnished a transcription of the court reporter's notes of their mistrial, a commodity which they surely would have purchased as a matter of course had they been financially able.

\*　　\*　　\*　　\*　　\*　　\*

Restated, our holding today is simply that appellants were, and upon a retrial are, entitled to a copy of the transcription of the court reporter's notes from their initial trial and that the trial court's denial of their requests were, under the aegis of *Britt v. North Carolina* and our interpretation there, reversible error. (footnote omitted)

Shortly thereafter, in *Armour v. State*, 606 S.W.2d 891 (Tex.Cr.App.1980), we held the accused is presumed to have a need for a transcription of the court reporter's notes from his first trial. Furthermore, the accused does not bear the burden of showing a particularized need for the transcript, nor of showing that the alternatives are inadequate. If the State decides to oppose the request, it bears the burden of proof to show lack of need. *Armour*, supra, at 894.

However, in the case at bar, appellant now seeks to extend this ruling to hold that he is entitled to a transcription of the court reporter's notes from *his co-defendant's* trial. Therefore, the instant case is distinguishable from the facts in *Billie*, supra, and *Armour*, supra, which permit the indigent appellant to be provided with a copy of the transcription of his own trial, not that of a third party.

As noted by the Court of Appeals:

The defendant concedes that this case is distinguishable from the cited authorities. Here he is requesting that the proceedings in a third party's trial be transcribed while in the cases cited the appellants sought transcription of their own prior mistrial. The defendant contends this is a distinction without a difference, even though we do not know if the defendant was even mentioned in the testimony at the co-defendant's trial. We do not know if the testimony in that trial was consistent or inconsistent with the defendant's present position.

Additionally, we note that the request in our present case is much broader than that approved in the modified opinion in *Billie*. Here the defendant requests a transcription of the entire trial proceedings, whereas in *Billie* the court held that the Defendant need only be furnished with a transcription of the testimony of the State's witnesses.

Rather than extend and broaden the *Billie* rule as requested by the defendant, we feel that each request should be treated on a case by case basis. The defendant should set out with specificity that portion of the testimony he desires from any prior proceeding, whether from his own trial or that of a third party, and demonstrate a particular need for a transcription of that evidence. Much weight should be given to the trial judge's exercise or discretion after conducting a hearing on the particular request.

■ In the instant case, the appellant wholly failed to demonstrate a "particularized specific" need for the transcription of his co-defendant's trial. The sum total of appellant's showing of need was his request for an entire transcription of Woerner's trial. Appellant merely alleged the copy of the third party's transcription was necessary to enable him to prove his defense of alibi. However, his "need" failed to meet the test of a "particularied, specific need." *Britt*, supra; *Billie*, supra. Appellant failed to explain the manner in which he would use the transcription to assist him in his alibi defense. Moreover, appellant failed to request specific passages of testimony, but requested the *entire* transcription of Woerner's trial. As appellant failed to demonstrate a "particularized, specific need" for the transcription of his co-defendant's trial, we refuse to extend the presumption of need noted in *Armour*, supra.[1]

■ Due to the absence of any Texas law on the subject, we will adopt the ratio-

---

1. There is no transcription of any hearing on the motion in this record. Without more, the motion itself, in this case does not show a particularized need.

nale employed by appellate courts in our sister states. In the absence of a showing of some particularized need, the presumption of need as set forth in *Britt*, supra, should not be applied to transcriptions of third party trials. Rather, the accused shall be required to demonstrate a specific need for the transcript. A majority of other jurisdictions have employed this rationale when addressing the issue. In *People v. Brown*, 126 Mich.App. 763, 337 N.W.2d 915 (1983), the Michigan Court of Appeals held an indigent appellant must show the transcription of the separate trial of his co-defendant will be valuable to him. The court further held no error was committed in denying the appellant's motion for production where he did not prove in the trial or appellate court how the transcription of the co-defendant's trial would have assisted in his trial preparation or in his attempt to impeach the State's witnesses. In *State v. Cox*, 101 N.J.Super. 470, 244 A.2d 693 (App.Div.1968), *cert. denied* 53 N.J. 510, 251 A.2d 449 (1969), the court held the defendant's attorney failed to state how the transcription would aid him in preparing for trial. The court needs to be convinced the attorney's desire for the transcript will materially aid the client. Mere hope that a transcript may assist an attorney in preparing a case will not suffice. Furthermore, in *State v. Coe*, 223 Kan. 153, 574 P.2d 929 (1977), the court held an indigent appellant in a criminal proceeding had no right to be supplied with a transcription of the separate trial of his co-defendant. However, upon proper showing of need, an indigent appellant is entitled to have a transcription of his preliminary hearing or portions of previous trial proceedings prepared at the State's expense if the transcription is necessary for the appellant to present his defense and adequate alternatives do not exist. See *State v. Robinson*, 83 N.C.App. 146, 349 S.E.2d 317 (1986); *Mardia v. State*, 423 So.2d 331 (Ala.Crim.App.1982); *State v. Tison*, 129 Ariz. 526, 633 P.2d 335 (1981), *cert. den.*, *Tison v. Arizona*, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147

(1982), *reh. den.*, *Tison v. Arizona*, 459 U.S. 1024, 103 S.Ct. 391, 74 L.Ed.2d 520 (1982); *State v. Rollie*, 585 S.W.2d 78 (Mo. Ct.App.1979); *State v. Peterson*, 46 Ohio St.2d 425, 349 N.E.2d 308 (1976); *State v. Elliott*, 524 S.W.2d 473, (Tenn.1975). In the instant case, the appellant failed to demonstrate any particularized need for a transcript of his co-defendant's trial. He merely requested the transcription of Woerner's trial. The presumption of need as noted in the *Armour*, supra, case does not apply to a request for a third party's trial. Appellant's ground for review is overruled and the judgment of the Court of Appeals is affirmed.

CLINTON, Judge, dissenting.

"Our decisions for more than a decade now have made clear that differences in access to the instruments needed to vindicate legal rights, when based upon the financial situation of the defendant, are repugnant to the Constitution. [citations omitted]. Only last Term, in *Long v. District Court of Iowa*, 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290 (1966), we reiterated the statement first made in *Smith v. Bennett*, 365 U.S. 708, 709, 81 S.Ct. 895, 896, 6 L.Ed.2d 39 (1961), that 'to interpose any financial consideration between an indigent prisoner of the State and his exercise of a state right to sue for his liberty is to deny that prisoner the equal protection of the laws.' We have no doubt that the New York statute ..., as applied to deny a free transcript [of a preliminary hearing] to an indigent, could not meet the tests of our prior decisions."

*Roberts v. LaValle*, 389 U.S. 40, 42, 88 S.Ct. 194, 196, 19 L.Ed.2d 41 (1967).

Judges constituting a panel of the San Antonio Court of Appeals in the instant cause erroneously believed the holding of the Supreme Court in *Britt v. North Carolina*, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed. 2d 400 (1971), as well as our own in *Billie v. State*, 605 S.W.2d 558 (Tex.Cr.App.1980), is *sui generis*. *McKibbon v. State*, 714 S.W.2d 70 (Tex.App.—San Antonio 1986).[1]

---

1. The opinion states:

"Rather than *extend and broaden* the *Billie* rule as requested by the defendant, we feel

However, neither holding is. Rather, *Britt* is merely an application of a broader principle to a given situation, as the Supreme Court itself made abundantly plain:

> "... We granted certiorari to determine whether the rule of *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed.2d 891 (1956), applies in *this* context. * * *
>
> *Griffin v. Illinois* and its progeny establish the principle that the State must, as a matter of equal protection, provide indigent prisoners with *the basic tools of an adequate defense* or appeal, when those tools are available for a price to other prisoners. While the outer limits of that principle are not clear, there can be no doubt that the State must provide an indigent defendant with *a transcript of prior proceedings* when that transcript is needed for an effective defense or appeal. [note 1, listing host of progeny of *Griffin*, omitted]. The question here is whether the state court properly determined that the transcript requested in this case was not needed for an effective defense.

> \*    \*    \*    \*    \*    \*

> We agree with the dissenters that there would be serious doubts about the decision below if it rested on petitioner's *failure to specify how the transcript might have been useful to him.* Our cases have consistently recognized the value to a defendant of a transcript of prior proceedings, *without requiring a showing of need tailored to the facts of the particular case....* [E]ven in the absence of specific allegations it can ordinarily be assumed that a transcript of a prior mistrial would be valuable to the defendant in at least two ways: as a discovery device in preparation for trial, and as tool at the trial itself for the impeachment of prosecution witnesses."

that each request should be treated on a case by case basis."

*Id.,* at 71. (All emphasis is mine throughout unless otherwise noted.)

The San Antonio Court also formulated procedural requirements that are utterly at odds with *Britt, Billie* and progeny, *viz:*

"The defendant should *set out with specificity that portion of the testimony* he desires from

*Britt,* supra, 404 U.S. at 227–228, 92 S.Ct., at 433–434. Accord: *Armour v. State,* 606 S.W.2d 891 (Tex.Cr.App.1980).

Much as the San Antonio Court did, the majority here says that "the instant case is distinguishable from the facts in *Billie,* supra, and *Armour,* supra ...," at 85. Of course the *facts* are not the same, but that does make this cause "distinguishable" in *principle* from *Britt, Billie* and *Armour.*

*Britt* itself was "distinguishable" in context from *Griffin v. Illinois:* the former sought a transcript of a prior trial ending in a mistrial; the latter wanted a record of trial for purposes of appeal. The Supreme Court applied to *Britt* the principle established by *Griffin* and its progeny, *viz:* "the State must, as a matter of equal protection, provide indigent prisoners with the *basic tools of an adequate defense* or appeal, when those tools are available for a price to other prisoners. *Id.,* 404 U.S. at 227, 92 S.Ct., at 433. It found that "there can be no doubt that the State must provide an indigent defendant with a transcript of *prior proceedings* when that transcript is needed for an effective defense." *Ibid.* It assumed that a transcript of a prior mistrial is "valuable to the defendant in *at least* two ways: as a discovery device ... and as a tool at the trial itself for the impeachment of prosecution witnesses." *Id.,* at 228, 92 S.Ct., at 434.

As a "basic tool of an adequate defense," a transcription of testimony and evidence admitted against a confederate in an earlier trial of the same transaction is likely to be more valuable than transcriptions of a mistrial in *Britt, Billie* and *Armour,* for the very practical reason that appellant was not present at the former and, therefore, not familiar with the evidence adduced as he would be at his own prior trial. Moreover, the record here plainly demonstrates

any prior proceeding, whether from *his own trial* or that of a third party, and *demonstrate a particular need* for a transcription of that evidence. Much weight should be given to the trial judge's exercise of discretion after conducting a hearing on the particular request."

those values identified in *Britt* and more obtain in this cause, expressions in the opinion of the San Antonio Court and in the majority opinion notwithstanding.[2]

There is record evidence that participation by appellant in the instant offense was first revealed to authorities through testimony of John Neely, victim and complainant, during trial of alleged confederate James Woerner on or about October 19, 1984. The indictment against appellant was filed November 14, 1984; it alleges that appellant committed aggravated robbery of John Neely. Trial attorney for appellant was appointed February 4, 1985.

February 26, 1985, counsel filed several pretrial motions, two of which are germane to our inquiry, namely: "Defendant's Motion for a Transcript of the Record of a Co–Defendant" (motion for transcription) and "Defendant's Motion to Suppress Illegal Identification and for Identification Hearing out of Presence of Jury" (motion to suppress identification). Those motions and others were presented to the trial court March 4, 1985.[3]

In pertinent part, motion for transcription referred to the prior trial of James Woerner, and alleged with respect to it the following (paragraph numbers omitted):

"*Physical evidence and testimony* adduced in [Woerner's] trial bears directly upon the *credibility of identification witnesses to be called by the State* to testify in the instant case against Defendant."

The ... transcript will show that identity testimony to be used ... against defendant has been *tainted* by [Woer-

ner's] jury trial, and Defendant has *no means* of demonstrating said defect to this Court *except by transcript of the former trial.*"

The motion to suppress identification requested the trial court to determine, *inter alia,* "what pretrial identification procedures were followed by the District Attorney's office, the San Antonio Police Department, or by the witness [John Neely]" in order to decide whether appellant's right to counsel has been violated and whether in-court identification by any witness has been "unfairly influenced by any police officer or anyone else in violation of the due process clause of the Fourteenth Amendment;" it described germanely the previous identification incident and contended (paragraph number omitted), *viz:*

"Prior to viewing the photographic spread, the witness, JOHN NEELY, was exposed to a single photograph of Defendant on or about October 19, 1984 at the 227th District Court, in Cause Number 84–CR–2745, a related case involving an alleged Co–Defendant, one JAMES WOERNER. The influence obtained by the exposure to the single photograph by the Defense Attorney in Cause No. 84–CR–2745 rendered the identification of the Defendant by the witness, JOHN NEELY, at the subsequent photo spread, *tainted and illegal.*"

The trial judge did not rule on merits of motion to suppress identification at the March 4 hearing, noting instead above his signature: "Parties agree to have identification outside presence of Jury. Granted."[4]

---

**2.** As the majority notes at page 85 of its opinion, the San Antonio Court complained *inter alia* that "we do not know if the defendant was even mentioned in the testimony at the co-defendant's trial ... [or] if the testimony in that trial was consistent or inconsistent with the defendant's present position." For its part the majority says that appellant "merely alleged the copy of the third party's transcription was necessary to enable him to prove his defense of alibi ... [and he] failed to explain the manner in which he would use the transcription to assist him in his alibi defense."

What the San Antonio Court professed not to know is ascertainable from the record. Value

of the transcription is not limited to assisting a particular defense, *Britt,* supra.

**3.** While, as the majority points out at note 1, page 85, of its opinion, our record does not contain a transcription of that hearing, we must presume the judge of the trial court read the motions and heard enough to inform his rulings. Indeed, the denial order at the foot of the motion states that the court "heard the evidence and arguments of counsel [for the parties]."

**4.** The recessed hearing resumed April 15, and both John Neely and Joseph O'Brian, a criminal investigator for the district attorney, testified to the prior identification procedures in October 1984 during trial of James Woerner.

Through the motions of his attorney appellant brought himself within the entitlements of *Britt, Billie* and *Armour.* Neither require more than a simple motion "alleging that he was indigent, and asking for a free transcript of the first trial," *Britt,* 404 U.S. at 226, 92 S.Ct. at 433; "requesting a transcription [and] alleging that he needed the transcription ... both as a discovery device ... and as a tool at the trial itself for the possible impeachment of the State's witnesses [and affirming his status as a pauper]," *Billie,* at 559–561; "alleging that he was indigent and that the transcription of the court reporter's notes was 'essential to the proper preparation and handling of his defense upon trial,'" *Armour,* at 891.

On rehearing in *Billie* the Court modified our holding on original submission "to make it clear that an indigent defendant need only be furnished without cost for use in a subsequent trial a transcription of the testimony of the State's witnesses, since it is usually only that testimony that could be used for discovery and impeachment." *Billie,* at 565.[5] However, in his motion for a transcription appellant focused on physical evidence and testimony "bear[ing] directly on the credibility of identification witnesses to be called by the State to testify in the instant case against Defendant," alleging that it "has been tainted by [Woer-

ner's] jury trial." While his prayer may be read to contemplate the entire transcription of testimony and evidence adduced, it is strange and curious doctrine that denies an accused that to which he is entitled, on grounds that he asked for too much.

The basic principle at work here is that "[t]here can be no equal justice where the kind of trial a man gets depends on the amount of money he has." *Griffin v. Illinois,* supra, 351 U.S. at 19, 76 S.Ct., at 591. A transcription of physical evidence and testimony pertaining to identification of appellant as a party to the aggravated robbery admitted in Woerner's trial is, like the mistrial transcript in *Britt,* a valuable tool. As Justice Douglas discerned:

"... [Such a] transcript contains not only prosecution witnesses' names and addresses but their stories under oath and it contains the entire theory of the government's case. Such a document is a complete dossier of the opposing case for which even the most liberalized rules of civil discovery have no equivalent. While this exception [allowing defendants to purchase mistrial transcripts] endures, the State may not condition its availability upon financial considerations which deprive the poor of this valuable tool."

John Neely related that counsel for Woerner had talked with him in the hallway before going in to testify; he showed Neely a photograph of appellant and, after Neely identified him as one of the robbers, counsel told him that appellant had signed a confession to the offense. While Neeley was on the witness stand attorney for Woerner produced the photograph and displayed it to Neely. Under questioning Neely said "that was the fellow who robbed me and did all the talking" while holding a gun to his back, taking his wallet and threatening to kill him. After his testimony Neely found himself in the office of O'Brian where he was shown a photo array; O'Brian asked Neely to look at the photographs and "see if you can pick out the man that robbed you." Neely selected appellant.

O'Brian identified five photographs in the array, and said when asked to do so Neely picked appellant.

**5.** The restriction imposed was closely questioned by Presiding Judge Onion writing for a

Court Panel in *Cook v. State,* 611 S.W.2d 83 (Tex.Cr.App.1981), *viz:*

"The holding in *Billie* on rehearing is suspect in light of the language in *Britt v. North Carolina,* supra, and other cases.... *Britt* made clear that the transcript of the first trial was to be used in defense as well as in cross-examination and possible impeachment of the prosecution's witnesses. *Britt* also made clear that an indigent defendant need not establish a particularized need for any portion of transcript before he was entitled to the same. Note that in *United States v. Baker,* 523 F.2d 741 (5th Cir.1975), and *United States v. Smith,* 605 F.2d 839 (5th Cir.1979), under *Britt* an indigent defendant is entitled to a *complete* transcript of previous trial, without any showing of a particularized need for the same. *United States v. Smith,* supra; *State v. Goodall,* 407 A.2d 268 (Me.1979). Thus the viability of the opinion on rehearing in *Billie* must be questioned."

*Id.,* at 86, n. 3 (emphasis by Presiding Judge Onion).

*Britt,* supra (Dissenting Opinion, 404 U.S. at 241, 92 S.Ct. at 440).

Today the majority departs radically from that constitutional principle and its many applications to transcriptions of prior proceedings. Its opinion lays down conditions for obtaining basic tools of an adequate defense—a transcription of prior proceeding to which an accused is constitutionally entitled—that for all practical purposes amount to compliance with requisites of discovery in Chapter Thirty Nine, particularly Article 39.14, V.A.C.C.P.

For the reasons stated *ante,* to the diminution of a constitutional right to equal protection of law, I must dissent.

TEAGUE and MILLER, JJ., joins.