**Edward Dee BROOKS, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–91–305–CR.**

Court of Appeals of Texas,
Fort Worth.

Dec. 21, 1994.

Rehearing Overruled March 31, 1995.

**606**

D. Keith Orsburn, Denton, for appellant.

Bruce Isaacks, Criminal Dist. Atty. and Kathleen A. Walsh, David C. Colley, Stacy Scofield, Nancy Jessee, Assts., Denton, for appellee.

Before HILL, C.J., and FARRIS and HICKS, JJ.

**OPINION ON REMAND**

HILL, Chief Justice.

Edward Dee Brooks was convicted by a jury of the offense of aggravated robbery for the robbery of a teller at a savings and loan association. *See* TEX.PENAL CODE ANN. § 29.03 (Vernon 1994).[1] The teller, Jeanice Madewell, testified that Brooks robbed her at gunpoint. The jury assessed punishment, enhanced by two prior felony convictions, at ninety-nine years' imprisonment in the Texas Department of Corrections (now known as the Institutional Division of the Texas Department of Criminal Justice). This court affirmed the conviction in an unpublished opinion. On remand from the court of criminal appeals we reconsider Brooks' sixth and eighth points of error.

There is an ambiguity in the opinion on appellant's petition for discretionary review which requires this court to determine the scope of the remand. The opinion states:

In part of Appellant's second ground for review he contends the Court of Appeals did not address his argument in his fourth point of error that under the *Gaskin*[2] rule he was entitled to a transcription of a witness' testimony given at a previous trial.

The ambiguity lies in the fact that the part of the second ground for review which addresses the denial of a transcription of testimony refers to Brooks' sixth point of error.

The arguments of the fourth point of error are raised in the third ground for review. While this point of error does raise a *Gaskin* argument, it concerns the failure of the State to produce a statement made by a witness prior to any trial.

We review the sixth point of error instead of the fourth because the court of criminal appeals directs us towards the question involving transcription of prior testimony at a trial. The opinion further states that "Appellant's remaining grounds of error, including that part of ground two not involving the

---

1. The Legislature amended section 29.03 effective September 1, 1994, but the sections pertinent to Brooks' conviction remained unchanged.

2. *Gaskin v. State,* 172 Tex.Crim. 7, 353 S.W.2d 467 (1961). This rule is subsumed in TEX.R.CRIM. EVID. 614. *Washington v. State,* 856 S.W.2d 184, 188 n. 4 (Tex.Crim.App.1993) (footnote added).

transcription of previous testimony, are refused." This language controls the mislabelling of the points of error.

Brooks raises two points of error on remand. In his sixth point of error he argues that the trial court erred in denying him transcripts of a witness's testimony from an earlier trial. In his eighth point of error Brooks argues that the court erred in admitting certain medical records.

We reverse and remand for new trial because the court erred in denying his request for a transcription of the prior testimony.

## SIXTH POINT OF ERROR

Brooks' sixth point of error asserts that the trial court committed fundamental error in denying his request that the written testimony of the eyewitness, Jeanice Madewell, given in the trial of co-defendant Johnny Zurfluh be made available to him. After Madewell testified on direct examination, Brooks' attorney requested a transcript of Madewell's testimony from the Zurfluh trial at the conclusion of Madewell's testimony in the case at bar. Brooks contends that the prior statements made by Ms. Madewell under oath in the Zurfluh trial were discoverable under the *Gaskin* rule, and should be furnished to the defendant. The request was denied.

Brooks presents two theories based on his *Gaskin* request. The first theory is that the trial court committed fundamental error in denying the request for a transcript because the *Gaskin* request satisfied the "particularized, specific need" requirement for the transcription of the trial of a third party. The second is that the failure of the trial court to order production of the statements˜ under *Gaskin* is itself fundamental error.

■ Addressing the first theory we turn to the original opinion by this court. It is well settled that an indigent defendant is entitled upon timely request to be furnished without cost, for use at a subsequent trial, a transcription of his earlier mistrial, if it is needed for an effective defense. *Britt v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400, 403 (1971); *Billie v. State,* 605 S.W.2d 558, 560–61 (Tex.Crim.App.

1980). In such cases, the accused is presumed to have a need for the transcription of the court reporter's notes from his first trial. *Armour v. State,* 606 S.W.2d 891, 894 (Tex. Crim.App. [Panel Op.] 1980). Furthermore, the accused does not bear the burden of showing a particularized need for the transcript, nor of showing that the alternatives to acquire the same evidence are inadequate. *Id.*

The court of criminal appeals has refused to extend the holdings of *Britt* and its Texas progeny to cases involving an appellant's request for the transcription of the trial of a third party. *See McKibbon v. State,* 749 S.W.2d 83, 86 (Tex.Crim.App.), *cert. denied,* 488 U.S. 859, 109 S.Ct. 154, 102 L.Ed.2d 125 (1988). The *McKibbon* court held that in the absence of a showing of some particularized need, the presumption of need should not be applied to transcriptions of third party trials. *Id.* Rather, the accused shall be required to demonstrate a specific need for the transcript. *Id.* Moreover, the *McKibbon* court found that a simple request for the transcript, without more, is insufficient to show a "particularized, specific need." *Id.* at 85.

■ Brooks made a timely request for the transcript of Madewell's testimony even though his trial had started. Ordinarily a request for transcription made after the start of the trial would not be timely. *See Hutchinson v. State,* 754 S.W.2d 746, 747 (Tex. App.—Houston [14th Dist.] 1988, no pet.). The *Hutchinson* opinion states that the request was made for a "transcript of the proceedings of the first trial in order to effectively cross-examine the state witnesses." *Id.* at 746. However, in the context of a request to use the prior testimony of the specific witness for *Gaskin* cross-examination, a timely request can be made after the witness has testified. Tex.R.Crim. Evid. 614; *see Billie,* 605 S.W.2d at 561–62. Furthermore, as in *Billie,* Brooks also made a motion for discovery of a transcription of Madewell's testimony prior to the trial. *Billie,* 605 S.W.2d at 559.

■ Brooks showed a particularized need for the transcription. In order to obtain a transcription of testimony from the

trial of a third party Brooks must show a particularized, specific need. *McKibbon,* 749 S.W.2d at 85. Brooks' attorney requested the transcription during a voir dire of Madewell in an attempt to impeach her. Immediately prior to the inquiries about the Zurfluh trial Brooks' attorney completed questioning Madewell about her testimony in the Pierce trial, for which he had a transcription of her testimony. Brooks showed he needed access to a limited portion of the transcript of the Zurfluh trial in order to continue the cross-examination and impeachment of the witness. This a sufficiently particularized need to allow access to that part of the Zurfluh transcript containing Madewell's testimony.

The State then argues that it could not be ordered to produce the transcription of the Madewell testimony because a statement of facts for the Zurfluh case does not exist, or if it does exist is not in the possession of the State. The State argues the transcription, if any, is in the possession of the Zurfluh trial court and court reporter. A party possesses a statement if it is within his control or readily accessible. *Jenkins v. State,* No. 71,040, slip op. at 11, 1993 WL 138800 (Tex.Crim.App. May 5, 1993). Here because the court is required to order the State to obtain from the other court the transcript for an indigent defendant who satisfies *Britt* and *McKibbon,* we hold the transcript is "readily accessible" within the meaning of *Jenkins.*

*McKibbon* does not set forth a standard for reviewing the harm caused by the denial of a transcript of a third party's trial to which the defendant is entitled. We adopt the same standard used in reviewing denial of a transcript under *Billie.* The *Billie* court looked to whether the denial of the transcript worked a fundamental unfairness in the trial. *Billie,* 605 S.W.2d at 562. Absent a showing by the State that Brooks had no need for the witness's testimony from the earlier trial to mount an effective defense, harm is presumed. *White v. State,* 823 S.W.2d 296, 299–300 (Tex.Crim.App.1992).

The State presents no argument that Brooks had no need for the previous testimony. The trial court's refusal to order the production of the portion of the Zurfluh transcript containing Madewell's testimony was reversible error.

Turning to the second of the two *Gaskin* theories presented by Brooks we look to the language of TEX.R.CRIM.EVID. 614:

(a) **Motion for Production.** After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the state or the defendant and his attorney, as the case may be, to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.

*Id.* The State argues that the statement of facts from the Zurfluh trial was not in the possession of the State, but in the possession of a trial court. However, possession means actual possession or readily accessible. *Jenkins,* No. 71,040, slip op. at 11. The record shows that the trial court determined that the transcription was not "readily accessible" to the State within the meaning of TEX. R.CRIM.EVID. 614.

The decision that the Zurfluh testimony was not readily accessible was an abuse of discretion. The State is required to make the transcript available to an indigent defendant who has satisfied the requirements of *McKibbon* and thus *Billie.* *McKibbon,* 749 S.W.2d at 85. Thus the transcript of the particular and specific testimony must be considered "readily accessible."

In determining harm under the *Gaskin* line of cases we must consider whether the accused was denied effective cross-examination or possible impeachment due to the denial of the transcriptions. *Cullen v. State,* 719 S.W.2d 195, 196–98 (Tex.Crim.App. 1986). In order to make such a determination, the appellate court must review the documents in question. *Id.* However, where the defendant is denied the opportunity to make the statements available for the appellate record so that harm can be determined, harm is presumed. *See, e.g., White v. State,* 496 S.W.2d 642, 646 (Tex.Crim.App.1973); *Zanders v. State,* 480 S.W.2d 708, 710–11 (Tex.Crim.App.1972), *cert. denied,* 421 U.S.

951, 95 S.Ct. 1685, 44 L.Ed.2d 106 (1975). Here, Brooks requested but was denied the opportunity to make the Zurfluh statement of facts part of the record for appeal. Because we do not have the reports before us to review, we cannot conclude beyond a reasonable doubt that the error made no contribution to the verdict.

The sixth point of error is sustained. We reverse and remand for new trial.

### EIGHTH POINT OF ERROR

While not necessary for the disposition of the case we will address Brooks' final point of error to provide guidance to the trial court should the same question be raised in the new trial. Brooks' eighth point of error complains of the admission into evidence of his medical records from the Denton County Jail.

Brooks asserts that the medical records contain inadmissible hearsay and were not properly authenticated. The State argues that the medical records are admissible pursuant to the hearsay exception contained in TEX.R.CRIM.EVID. 803(6).

Brooks argues that the handwritten statement "[m]y leg was broken on 6–15–86 and has not healed—I can't walk correctly and my leg hurts" is inadmissable hearsay. The statement is written in response to a question in the form for requesting medical services used by the Denton County Jail. Brooks fails to cite any legal authority or analyze the pertinent law in the context of the instant facts. As a result he presents nothing for review in this case. *See Pierce v. State*, 777 S.W.2d 399, 418 (Tex.Crim.App. 1989), *cert. denied*, 496 U.S. 912, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990).

■■■ Records of a regularly conducted business activity are admissible if they are made at or near the time of the activity, recorded as part of a regularly conducted business activity, made by, or from data provided by, a person with knowledge, unless the source of information or the method of preparation indicates a lack of trustworthiness. TEX.R.CRIM.EVID. 803(6); *see Mitchell v. State*, 750 S.W.2d 378, 379 (Tex.App.— Fort Worth 1988, pet. ref'd).

■■■ Rule 803(6) does not require the witness laying the predicate for the introduction of the records to be the creator of the records or to have personal knowledge of the content of the records. TEX.R.CRIM.EVID. 803(6). The response to a standard question is a content of the record. The witness need only have personal knowledge of the manner in which the records were prepared. *Id.*

Lee Glover testified that he was the custodian of medical records at Denton County Jail. According to Glover's testimony, the Brooks' medical records from the jail complied with the requirements of rule 803(6).

■■■ Brooks then argues that the medical records should be excluded because there was no evidence showing whose handwriting was on the exhibit; the records were untrustworthy; or, because the records were too remote from the pertinent events.

There is no requirement that the custodian of the records be able to identify the source of any or all of the handwritings in the record. *See Mitchell*, 750 S.W.2d at 379. The records were maintained by Denton County to record the use of medical facilities by inmates. There is nothing apparent in the record before us to render this medical record untrustworthy enough to justify exclusion. The medical records were made during Brooks' confinement, approximately two months after the charged offense. Point of error eight is overruled.

We sustain point of error number six. We reverse the judgment of the trial court and order a new trial.