**Francisco MELENDEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 13–95–297–CR.

Court of Appeals of Texas,
Corpus Christi.

Feb. 13, 1997.

Moses M. Salas, Jr., Harlingen, for Appellant.

Yolanda De Leon, District Attorney, Robert H. Moore, Jr., Asst. County Criminal Dist. Attorney, Brownsville, for Appellee.

Before DORSEY, CHAVEZ and RODRIGUEZ, JJ.

## OPINION

DORSEY, Justice.

Francisco Melendez appeals from his conviction for robbery and aggravated robbery. On appeal Melendez argues that the trial court erred in denying his motion for production of the transcript of testimony given by various witnesses for the State in the prior severed trial of appellant's co-defendant, Enrique Diaz Villanueva.[1] We affirm.

A jury convicted appellant of robbing Macario Trevino, a 72-year-old man, in the restroom of a bar. Because of Mr. Trevino's age, the robbery is aggravated.[2] Appellant was also convicted of robbing Jose Luis Rodriguez, who had come to Mr. Trevino's rescue. There were four critical witnesses to the assaults and robberies: Mr. Trevino, Mr. Rodriguez, Ms. Mata, who was the bartender, and Santiago Manrique, the police officer who collared appellant as he ran from the bar.

Mr. Rodriguez, a cab driver, testified he was off duty and went to the bar, sat at a table and ordered a beer. Soon Mr. Trevino came in, who Rodriguez knew as an occasional customer of his cab. He invited Trevino to sit with him and have a beer, but Trevino went to the restroom first. While in the restroom, Trevino was attacked by three men. The attack was heard from outside the restroom by Mata, who called for Rodriguez to come to Trevino's aid. Responding, Rodriguez found Trevino on the restroom floor being beaten by appellant, who was also trying to take Trevino's wallet from his pants. Rodriguez propelled Melendez from the restroom, helped Trevino to his feet and back into his pants, which apparently had been pulled down in the struggle for the wallet, put on shoes and took Trevino into the bar room and seated him in a chair. Rodriguez then confronted appellant, chastising him for attacking an old man. While doing so, Rodriguez was hit in the back of the head and

attacked by two others, with appellant joining in. The three beat and kicked Rodriguez and stole his money. Rodriguez identified appellant as Trevino's assailant as well as his own.

Mr. Trevino testified that he went to the bar to have a beer, left a bag of groceries with the bartender to keep for him while he was there, and went to the restroom before joining Rodriguez at his table. While in the restroom he was assaulted by appellant. He was knocked to the floor after a struggle during which his pocket book was taken. Mr. Rodriguez came to his rescue, removed his assailant from the restroom, helped Trevino get up and dressed and seated him in a chair outside in the bar. He heard the attack on Rodriguez and the struggle, but because of the position of his chair, and his missing eyeglasses, he could not tell for sure what was happening.

The bartender, Ms. Mata, said that Mr. Trevino was at the bar before Rodriguez. After Trevino went into the restroom she soon heard noises from there as if a wall or door was being hit. She asked a friend to go check on it, and when the friend opened the door, Ms. Mata saw one of Mr. Trevino's shoes loose on the floor. She called the police and then went to tell Mr. Rodriguez to check on Mr. Trevino. After Rodriguez went in, the first person out was appellant. After Rodriguez brought Trevino out and seated him in a chair, Rodriguez confronted the appellant, and was then hit in the back of the head with a beer bottle by one of the men sitting with appellant earlier. Rodriguez staggered backwards and was attacked by three men—appellant and two others. The three were beating, kicking, and reaching into Rodriguez's pockets to rob him. While one was hitting or kicking the victim, another was trying to get his wallet. When the police officer appeared in the door of the bar, the three assailants ran away, but the officer caught appellant as he tried to run by him.

---

1. Appellant's motion for production asked for the testimony of all the State's subpoenaed witnesses: Jose Luis Rodriguez, Macario Trevino, Maria Mata, Santiago Manrique, Rolando Avita, Randy Ledbetter, Roberto Aguilar, Ediberto Garza, Dr. Victor-Hugo Arrelano, and Dee Longoria. However, Melendez's appeal only asserts error in the trial court's refusal to grant production of the transcripts for Rodriguez, Trevino, Mata, and Manrique.

2. Tex. Penal Code Ann. §§ 29.02, 29.03(a)(3)(A) (Vernon 1994).

Officer Manrique testified that when he arrived at the bar he saw three men beating Rodriguez. When he announced his presence and called on them to desist, they jumped up and ran past him out the door of the bar. He grabbed appellant, but was unable to seize the others. Another officer, Randy Ledbetter, testified that when he drove to the bar in response to a call he saw Officer Manrique struggling with appellant, and he went in pursuit of the other assailants.

Appellant testified on his own behalf that he knew nothing of the assault and robbery of Trevino. He stated that he was peacefully drinking a beer with friends and went to play the jukebox when Mr. Rodriguez came up and struck him without provocation. His friends came to his assistance and started fighting with Mr. Rodriguez. Appellant admitted kicking Rodriguez twice and testified that he felt protected when the police officer arrived and he went to the officer and said "arrest me." He seemed to say that Ms. Mata's testimony was motivated by revenge, because they once were intimate and she expected him to take her to Florida, which he has not.

Appellant and his co-defendant, Villanueva, were charged under the same indictment, but their trials were severed. Villanueva's trial happened first. Several witnesses in the Villanueva trial were also witnesses in the Melendez trial, including Trevino, Rodriguez, Mata, and Officer Manrique. Prior to trial, appellant's counsel moved to have supplied to him a transcription of the testimony of the State's witnesses who testified at Villanueva's trial. At the pre-trial hearing, the only explanation of the necessity for this record was that he needed it for cross-examination. The trial judge, after hearing argument, stated:

> I am going to carry this motion into the trial, gentlemen, but let's talk shop, also. This is a trial on a co-defendant. And you're not entitled to the transcript just because you want the transcript. You have got to show a specific need, okay. And if at a particular time a specific need is shown to the court, I will address it. Otherwise, at this time I will carry it into the trial.

During the trial after each of the State's witnesses testified, appellant renewed his request for a transcription of the witness's testimony from the prior trial; however, he never stated what the witness testified to in the earlier trial that was different from his present testimony, and never established any other particularized need for the court reporter's transcription. The trial court denied each of these requests.

▪ By five points of error, appellant argues that the trial court erred in denying his requests for transcripts of the witnesses' prior testimony because they gave testimony at his trial that was inconsistent with their prior statements, and these inconsistencies establish a particularized need for the transcripts of testimony given at the Villanueva trial.

▪ An indigent defendant may be entitled to a transcript of testimony from the previous trial of a co-defendant if he makes a showing of particularized need and indicates specifically what testimony is needed. *McKibbon v. State*, 749 S.W.2d 83, 85 (Tex. Crim.App.), *cert. denied*, 488 U.S. 859, 109 S.Ct. 154, 102 L.Ed.2d 125 (1988). In order to be entitled to such transcript, the defendant must make the trial court aware of a "particularized, specific need" for it and should "explain the manner in which he would use the transcription to assist him." *See id.*

Appellant's motion prior to the trial contained no showing of particularized need, only unsubstantiated claims that the transcripts could possibly contain material useful for cross examination and impeachment of the State's witnesses. Similarly, appellant's objections during trial in which he renewed his requests for transcripts of the witnesses' prior testimony did not identify any particularized, specific need. Appellant points to inconsistencies between the testimony given at his trial and the witnesses' written statements made prior to the trial as support for the proposition that further inconsistencies will be found in the transcript of the Villanueva trial which will be useful for cross examination and impeachment.

The source of the rule relied on by appellant is *Britt v. North Carolina*, 404 U.S. 226,

92 S.Ct. 431, 30 L.Ed.2d 400 (1971), in which the United States Supreme Court held that an indigent defendant is entitled to a free transcription of the testimony of witnesses against the defendant at a prior trial that ended in mistrial. Although the Court held that a state must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal, the Court did not reverse the conviction. Rather, the majority held that an adequate alternative was available.

In *McKibbon,* the Court of Criminal Appeals said,

In the absence of a showing of some particularized need, the presumption of need as set forth in *Britt,* supra, should not be applied to transcriptions of third party trials. Rather, the accused shall be required to demonstrate a specific need for the transcript.

749 S.W.2d at 86.

 In that case the appellant failed to demonstrate any particularized need for a transcript of his co-defendant's trial. In the instant case, appellant says his particularized need is to adequately cross-examine the State's witnesses and to impeach them with inconsistencies between their testimony in the earlier trial and appellant's. However, after each of the State's witnesses testified and appellant renewed his motion, he never indicated there was a difference between the witness's prior testimony and that given in the present trial. A request for a transcription because one needs it for cross-examination is not a sufficiently specific statement of its necessity to satisfy *McKibbon.* As noted by the court in *McKibbon,* the "[m]ere hope that a transcript may assist an attorney in preparing a case will not suffice" to show a particularized need for that transcript. *Id.* (citing *State v. Cox,* 101 N.J.Super. 470, 244 A.2d 693 (App.Div.1968), *cert. denied,* 53 N.J. 510, 251 A.2d 449 (1969)). By arguing that he needed the transcripts of the witnesses' former testimony, appellant does no more than express his hope that the transcripts will assist him in his case. As noted in *McKibbon,* this does not rise to the level of showing a particularized need.

In any event, the discrepancies between the witnesses' trial testimony and their earlier statements to police are not significant, and do not lead to the conclusion that their prior testimony would present important opportunities for cross-examination. During the trial, appellant's counsel engaged each witness for the State in vigorous cross-examination, pointing out differences between their written statements and their current testimony. However, these inconsistencies are minor and explainable. For example, Mr. Rodriguez was taken to task because in his statement he said that Mr. Trevino first sat down at his table and then went to the rest room. In his testimony in court, Rodriguez said that Trevino didn't sit down, but came by the table and went to the restroom in the bar. There are similar discrepancies between Trevino's testimony and his earlier statement and also similar discrepancies in Ms. Mata's statements. When asked about the discrepancies in her testimony and statement, Ms. Mata said, "Well, maybe [the police officer] didn't understand me or maybe I didn't understand him." All three of these witnesses testified in Spanish and their words were translated into English during trial. When they gave their statements to the police, they spoke in Spanish, the officer wrote the statement in English, and then, before it was signed, the statement was read to the witness in Spanish by the officer.

All of the discrepancies were minor and they were well explored on cross-examination by able counsel. The jury resolved the conflicts in testimony. None of these discrepancies or conflicts were exculpatory of appellant and were largely immaterial to the issues of the case.

We hold that the trial judge's decision to deny appellant's requests for the transcripts was correct because appellant presented no adequate reason to that court, or to this one, why he needed the earlier testimony of the State's witnesses in order to conduct a meaningful cross-examination and impeach those witnesses with prior contradictory testimony.

Accordingly, we hold that the trial judge did not err in refusing to supply the appellant with a transcription of the testimony of

his co-defendant's prior trial. Appellant's points of error are overruled. Appellant's conviction is AFFIRMED.

Dissenting opinion by CHAVEZ, J.

CHAVEZ, Justice, dissenting.

I respectfully dissent. I would hold that appellant has shown particularized need for a transcript of the prior testimony of the two witnesses who testified that they were the victim's of appellant's attacks, Trevino and Rodriguez. I agree that Melendez's motion prior to the trial contained no showing of particularized need, and therefore the trial court's denial of the pretrial motion was proper. However, when Melendez reurged the motion during the trial, he had demonstrated inconsistencies in the statements of Trevino and Rodriguez. Trevino's testimony was inconsistent on whether he was attacked by one man or two and whether his glasses fell off or were pulled off of him by his attackers. As noted by the majority, Rodriguez's testimony was inconsistent on the circumstances leading up to the attacks.

Melendez argues that these inconsistencies demonstrate the likelihood that further inconsistencies will be found in the transcript of the Villanueva trial which will be useful for cross examination and impeachment. The majority notes that appellant never indicated any inconsistencies between the witnesses' prior testimony and that given at appellant's trial. The majority apparently would hold the appellant to the practically impossible burden of showing detailed information contained within a document that he can not possess. Indigent criminal defendants wishing for a transcript of prior testimony based on inconsistencies in the testimonies are caught in a viscous circle - they can not obtain a transcript unless they can show inconsistencies within the former testimony itself, yet they can not show inconsistencies in the former testimony unless they obtain a transcript. I would hold that the inconsistencies between the witnesses' statements at appellant's trial and previous written statements establish sufficient need for tran-

scripts of the testimony given by these witnesses in the co-defendant's trial.