NO. 07-03-0135-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

NOVEMBER 30, 2004

_____

BENJAMIN ALONZO ZEPEDA, A.K.A. BENJAMIN ORTEGA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 251ST DISTRICT COURT OF POTTER COUNTY;

NO. 44,027-C; HONORABLE PATRICK A. PIRTLE, JUDGE

_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**

After appellant Benjamin Alonzo Zepeda aka Benjamin Ortega pleaded not guilty, a jury convicted him of murder and assessed as punishment a sentence of 53 years confinement. By four issues, appellant urges us to find: (1) the evidence legally and factually insufficient; (2) the trial court erred in refusing his request for the transcript from

one of his co-defendant's trials; and (3) the court erred in denying his motion to suppress his incriminating statement to police. We affirm.

On January 23, 2001, officers located the body of the 70 year old victim in the back yard of his home. He had been beaten and stabbed to death. Neighbors identified three transients, Joe Delgado, Santos Torres, and another transient man as suspects in the murder. Delgado was arrested not long after the discovery of the body. In addition to confessing his part in the murder, Delgado implicated as participants Torres and an individual from Arizona (later identified as appellant) whom Delgado knew as Benjamin or Carlos. The information gleaned from Delgado's statement was broadcast to officers over police radio.

Shortly before noon on the 24th, officer Robert Mahaffee, who had a picture of Torres, was canvassing locales frequented by the homeless when he saw two men matching Delgado's description. After asking the men for their identification, Mahaffee confirmed one of them as Santos Torres; the other, he identified by an out-of-state identification card as Benjamin Alonzo Zepeda–appellant. Mahaffee handcuffed the men, patted them down for weapons, and placed them in the back seat of his patrol car. He advised them that "they were wanted for questioning in a criminal offense." According to Mahaffee, the men were not under arrest, but were merely being detained for questioning. Mahaffee then transported them to the Special Crimes Unit located on the second floor of the Amarillo Police Department. There, Mahaffee turned the individuals over to another

2

officer, Rudy Montano, who placed the men in separate interview rooms. After the men were situated in the rooms, Mahaffee's handcuffs were removed and returned to him. Although the men were not under arrest, Mahaffee believed they were not free to leave.

Around 11:50 a.m. Montano entered the room where appellant was being held and advised him of his *Miranda*[1] rights. Appellant told Montano that he understood those rights. A few minutes later, appellant indicated that he did not want to talk to Montano, and the officer left. Like Mahaffee, Montano did not believe that appellant was free to leave.

At approximately 12:30 p.m. Torres confessed to being involved in the murder. He also implicated Delgado and the man he knew as Carlos or Benjamin with whom he had been arrested (appellant). On the strength of that confession, Paul Horn, the lead detective on the case, secured an arrest warrant for Torres. Horn attempted to do the same for appellant; however, he was unsuccessful in convincing the District Attorney's Office to file a complaint and seek an arrest warrant for him. At that point, Horn realized he had to release appellant. But first, recognizing that, at a minimum, appellant was still a witness to a crime, Horn attempted to obtain from him some "witness background" information.[2] It was then that appellant began to question Horn. Initially, appellant queried whether "the other two" (Torres and Delgado) had given a statement, and Horn answered

---

[1]*See* Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[2]The "witness background sheet" Horn sought to complete requested such information as "the name of [appellant's] mother, an address and phone number . . . date of birth, his name, social security number and where he was staying."

3

affirmatively. Next, he asked if Torres and Delgado were "locked up and in jail." Horn told him that they were. Then, appellant asked Horn whether he thought "it would do any good for him to say anything." After Horn replied that the answer to that question was up to him, appellant volunteered, "I didn't want to kill that man." Appellant then provided a written statement describing his role in the offense and implicating Torres and Delgado. Appellant signed the statement at 8:16 p.m. Horn then requested, and appellant provided, consent to the taking of hair and blood samples. When Horn applied a second time for a warrant for appellant's arrest, he obtained one.

Appellant filed a motion to suppress his statement,[3] claiming he was illegally arrested without a warrant or probable cause when he was handcuffed and placed in the back of Mahaffee's patrol car. Then, because his incriminating statement emanated from an illegal arrest, he maintained that it should have been suppressed as fruit of the poisonous tree. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon Supp. 2004-05); *see* Wong Sun v. United States, 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Following a hearing, the court denied the motion. That ruling, claims appellant in his fourth issue, was wrong. We disagree. A trial court's ruling on a motion to suppress is reviewed for abuse of discretion. Oles v. State, 993 S.W.2d 103, 106 (Tex.Cr.App. 1999). When reviewing an appeal from the trial court's denial of a motion to suppress, great deference

---

[3]While appellant's suppression motion also sought the exclusion of "[a]ny tangible evidence seized in connection with this case," he only complains on appeal about the admission of his incriminating statement.

is afforded to the trial court's decision on mixed questions of law and fact that turn on an evaluation of credibility and demeanor. Guzman v. State, 955 S.W.2d 85, 89 (Tex.Cr.App. 1997). An appellate court must view the evidence in the light most favorable to the court's ruling. State v. Ballard, 987 S.W.2d 889, 891 (Tex.Cr.App. 1999). In a suppression hearing the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex.Cr.App. 2000). However, for mixed questions of law and fact which do not fall within this category, an appellate court may conduct a *de novo* review of the trial court's ruling. Hernandez v. State, 957 S.W.2d 851, 852 (Tex.Cr.App. 1998)(*citing Guzman*, 955 S.W.2d at 89). In other words *de novo* review applies when the facts are undisputed. State v. Jennings, 958 S.W.2d 930, 932 (Tex.App–Amarillo 1997, no pet.). Additionally, questions involving reasonable suspicion and probable cause should be reviewed *de novo* on appeal. *See* Loesch v. State, 958 S.W.2d 830, 832 (Tex.Cr.App. 1997). Finally, if the trial court's decision is correct on any theory of law applicable to the case, we will uphold that decision. *Ross*, 32 S.W.3d at 855-56.

Generally, evidence obtained as a direct result of illegal police conduct, be it illegal arrest or illegal search, is suppressed either by cases providing the remedy of exclusion of such evidence for violations of the Fourth Amendment and/or Article 1, Section 9 of the Texas Constitution, or by statutory provisions such as article 38.23 of the Code of Criminal Procedure. The federal exclusionary rule and article 38.23 extend not only to evidence obtained as a direct result of an illegal arrest, search, or seizure, but also to evidence

obtained as an indirect result of an illegal arrest, search, or seizure, known as the "fruit of the poisonous tree." *See Wong Sun*, 371 U.S. at 484; *see also* Smith v. State, 542 S.W.2d 420, 422 (Tex.Cr.App. 1976). On the other hand, both the state and federal exclusionary rules allow the admission of otherwise tainted evidence if the connection between the initial illegality and the discovery of the challenged evidence has become so attenuated as to dissipate the taint of the prior illegality. *See Wong Sun*, 371 U.S. at 487-88; *see also* Johnson v. State, 871 S.W.2d 744, 751 (Tex.Cr.App. 1994) (holding that attenuation doctrine is applicable to statutory prohibition against evidence obtained in violation of the law). The attenuation doctrine is applicable to article 38.23's prohibition against evidence obtained in violation of the law because evidence sufficiently attenuated from the violation of the law is not considered to be obtained therefrom. Sims v. State, 84 S.W.3d 805, 810 (Tex.App–Houston [1st Dist.] 2002, no pet.). Thus, the attenuation doctrine is not an exception to article 38.23, but rather is a method of determining whether evidence was obtained in violation of the law. *Id*. In determining whether the trial court abused its discretion in declaring a confession admissible despite its being the product of an illegal arrest, we must consider the following factors: (1) whether *Miranda* warnings were given; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. Dowthitt v. State, 931 S.W.2d 244, 261 (Tex.Cr.App. 1996). These factors do not necessarily carry equal weight, and it is not required that each factor be resolved in the State's favor. Juarez v. State, 758 S.W.2d 772, 780 (Tex.Cr.App. 1988).

6

Here, assuming *arguendo* that appellant was, in fact, illegally arrested when Mahaffee handcuffed and placed him in the back seat of his car, we conclude the taint of that illegal arrest was sufficiently attenuated from appellant's incriminating statement as to render the statement admissible. The record reveals that appellant was warned of his constitutional rights once at 11:49 a.m. and again at 7:09 p.m., shortly before giving his statement. Not only did the officers who provided the warnings testify that appellant indicated he understood them, but also, appellant signed two separate forms acknowledging his comprehension of his rights. Furthermore, the top of each page of the written statement contains the same warnings, and appellant's signature appears at the bottom of each one. Although not alone sufficient to attenuate the taint of an unlawful arrest, advising a defendant of his *Miranda* rights is an important factor favoring the admission of a subsequent statement. Maixner v. State, 753 S.W.2d 151, 156 (Tex.Cr.App. 1988).

As to proximity, appellant was detained shortly before noon on January 24, 2001. He was immediately taken to the Amarillo Police Department. He did not begin giving his written statement until shortly after 7:00 p.m. Seven hours from the time of appellant's detention until his interview is not so long that it becomes a particularly weighty factor for the State, but it is not so little that it favors appellant. *Cf.* Hankins v. State, 132 S.W.3d 380, 390 (Tex.Cr.App. 2004) (concluding that the passage of nine and a half hours did not favor either party). Thus, this factor does not weigh in favor of either party.

7

With regard to intervening circumstances, we observe that shortly after his detention, Torres provided authorities with a statement implicating appellant and Delgado in the murder. That statement, coupled with Delgado's narrative fingering appellant and Torres in the murder, provided independent probable cause for appellant's arrest. We conclude that, notwithstanding the District Attorney's Office reluctance to seek an arrest warrant on its strength,[4] Torres's statement was an intervening circumstance that could have served as the basis for appellant's subsequent arrest; thereby removing any taint from the initial detention. *Cf.* Fletcher v. State, 90 S.W.3d 419, 420 (Tex.App.–Amarillo 2002, no pet.) (concluding that the discovery of outstanding warrants for appellant, which served as the basis for his arrest, removed any taint that may have arisen from the original stop). The presence of intervening factors thus militates in favor of the State.

The fourth factor in the attenuation test, the purpose and flagrancy of the official misconduct, has been considered the most important factor. *Maixner*, 753 S.W.2d at 157. Here, we find the lack of misconduct to be determinative. This is not a case in which a police officer detained a suspect without reasonable suspicion for the purpose of engaging in a fishing expedition or inducing a confession. Upon arriving at the police station, officers immediately apprized appellant of his *Miranda* rights, and provided for all of his necessities. Additionally, they scrupulously honored appellant's invocation of his right to remain silent. When Horn approached appellant after appellant invoked the right, it was merely for the

[4]In fact, at the conclusion of the suppression hearing, the trial court found that "there was ample probable cause for a warrant to have issued . . . ."

8

purpose of obtaining contact information. It was, in fact, appellant who instigated the conversation with Horn regarding the status of his co-defendants. Horn asked no questions of appellant, but simply responded to appellant's queries. Appellant then volunteered, "I didn't want to kill that man." Following that admission, Horn again advised appellant of his *Miranda* rights and ensured that appellant understood them. We conclude the fourth attenuation factor weighs in favor of the State. Thus, after assessing the relevant factors of the attenuation test, we conclude that appellant's statement was sufficiently an act of his free will that the taint of an unlawful arrest, if any, was purged. *See Maixner*, 753 S.W.2d at 157-58. Appellant's fourth issue is overruled.

By his first and second issues, appellant challenges the legal and factual sufficiency of the evidence to support his conviction. Apart from providing citations to the cases establishing the standards of review for such challenges, however, appellant has failed to adequately brief these issues for our review. By raising an issue and failing to present any argument or authority on that issue, the party waives it. Tex. R. App. P. 38.1(h); Jackson v. State, 50 S.W.3d 579, 591 n.1 (Tex.App.–Fort Worth 2001, pet. ref'd). Appellant has, thus, waived his first and second issues. What is more, even assuming appellant had complied with the briefing requirements of the Rules of Appellate Procedure, we would still be constrained to overrule them. This is so because appellant provided a detailed statement inculpating himself at a minimum as a party to the brutal beating death of a 70 year old man. Having previously found that statement to have been properly admitted at

9

trial, we conclude it, alone, establishes legally and factually sufficient evidence to support the verdict. Appellant's first and second issues are overruled.

With his third issue, appellant complains "[t]he trial court erred when denying [his] numerous requests for the entire trial transcript of co-defendant Santos Torres, Jr.'s trial prior to the trial in [his] trial." We disagree. It is well settled that an indigent defendant is entitled upon timely request to be furnished without cost, for use at a subsequent trial, a transcript of his earlier mistrial, if it is needed for an effective defense. McKibbon v. State, 749 S.W.2d 83, 84 (Tex.Cr.App. 1988), *cert. denied*, 488 U.S. 859, 109 S.Ct. 154, 102 L.Ed.2d 125 (1988). The accused is presumed to have a need for the reporter's record from his first trial, and he has neither the burden of showing a particularized need for the record nor the onus to prove that the alternatives are inadequate. *See id.* When, however, an accused seeks the transcript of the testimony of the previous trial of a co-defendant, he must make a showing of a particularized need for the testimony and indicate specifically what testimony is needed. Melendez v. State, 942 S.W.2d 76, 79 (Tex.App.–Corpus Christi 1997, pet. ref'd)(citing *McKibbon*, 749 S.W.2d at 85).

Here, appellant filed a "Motion to Have Official Court Reporter Provide Defense Counsel with Transcript of Trial in Co-Defendant, Santos Torres, Jr.'s Trial Before Trial in this Matter" as well as an "Amended Motion for Free Transcript in Co-Defendant Santos Torres' Trial Pursuant to Rule 613 of the Texas Rules of Evidence." In the first, appellant claimed he needed the transcript "in order to effectively prepare for the defense in this

10

matter." In the amended motion, appellant suggested he required the transcript "for purposes of impeachment of the state's witnesses in this matter." At trial, after Mahaffee testified and appellant renewed his "request for previous testimony – for the transcript that Officer Mahaffee previously testified to in the trial of Santos Torres," he never indicated that there was a difference between the witness's prior testimony and that given in his trial. By his brief, appellant simply contends he needed "the entire trial transcript of Santo Torres' [sic] trial testimony in order to properly preserve [his] right to effective assistance of counsel by using such transcript for impeachment under Rule 613 of the Texas Rules of Evidence and under Rule 615 of the Texas Rules of Evidence." A request for a transcription because one needs it for cross-examination is not a sufficiently specific statement of its necessity to satisfy *McKibbon*. Likewise, the mere hope that a transcript may assist an attorney in preparing a case will not suffice to show a particularized need for that transcript. *Id*. In short, the trial court was correct in denying appellant's requests for the transcripts because he presented no adequate reason why he needed the earlier testimony of the State's witnesses in order to conduct a meaningful cross-examination and impeach those witnesses with prior contradictory testimony. Appellant's third issue is overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice

Do not publish.

11