Jaime Charles NONN, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–97–658–CR.

Court of Appeals of Texas,
Corpus Christi.

Jan. 27, 2000.

Rehearing Overruled March 9, 2000.

Norman E. McInnis, McAllen, for appellant.

Rene Guerra, Dist. & County Atty., Rolando Garza, Asst. Dist. Atty., Edinburg, for State.

Before Justices DORSEY, CHAVEZ, and RODRIGUEZ.

**OPINION**

Opinion by Justice DORSEY.

A jury convicted appellant Jaime Charles Nonn of capital murder. Because the State did not seek the death penalty the trial court assessed punishment at life in prison. By seven issues appellant complains that the trial court erred in admitting photographs in evidence, erred in admitting his written statement and his two video-recorded statements in evidence, failed to provide him a transcript of his pre-trial hearing, failed to instruct the jury on a lesser-included offense, and he complains of ineffective assistance of counsel. We affirm.

Carl Ginder and his wife Eleanor lived in San Juan, Texas. In the afternoon of December 20, 1994 Carl came home and discovered that Eleanor and their van were not at the house. The next day his wife had still not returned home so he notified the police that she and the van were missing. Homer Flores, an investigator for the Starr County Sheriff's Office, testified that on December 24, 1994, a patrolman called him to check out a vehicle emitting a foul odor of decomposing flesh. The vehicle, a 1990 Chevy van, was located in a county park in Rio Grande City, Texas. Flores knew that the person who was supposed to be driving the van, Eleanor Ginder, was reported missing. Flores found Eleanor's body inside the van, and he found a sawed-off shotgun inside a cabinet in the rear of the van. Another officer found a blood-stained, silver-colored kitchen knife in the van's glove box. The inves-

tigation revealed that appellant and a female companion had used Eleanor's credit card to buy electronics equipment at a Wal–Mart store in Rio Grande City and that appellant had pawned the merchandise. After gathering this information Flores and officers from the San Juan Police Department went to the home of appellant's parents, which was next door to the Ginder residence. Appellant lived with his parents, but he was not there when the police arrived. The police informed appellant's parents that they had found a knife that was involved in a murder. The police described the knife as silver and possibly a steak knife. Mrs. Nonn produced a knife set which had one knife missing. The knife found in the van's glove box matched this set. The Nonns told the police that appellant was in Chicago. Flores obtained arrest warrants for appellant and a female, Marie Garcia, for kidnapping. He informed the Chicago police about the warrants and appellant's address in Chicago.

Gregory Biaocchi, a detective for the Chicago Police Department, arrested appellant and Garcia in Chicago. They were taken to the police station and placed in separate interview rooms. Biaocchi advised appellant of his *Miranda* warnings, and appellant indicated that he understood them. When Biaocchi asked appellant if he wanted to speak to him he indicated that he did. At this point Biaocchi contacted the felony review unit, which was a branch of Cook County's prosecutorial system that assisted in criminal investigations. Biaocchi's testimony showed that in Illinois a common procedure is that prosecutors take written statements from suspects.

Michael Falagario, an assistant state's attorney for the Cook County State's Attorney's Office, worked in the felony review unit. He met appellant in the interview room and explained to appellant that he was not his lawyer, but that he was a lawyer who was working with the police on this case. Falagario asked appellant if he

had understood what he had told him, and appellant answered, " 'Yes.' " Falagario also advised appellant of his *Miranda* warnings. Appellant told Falagario that he understood his rights and that he wanted to make a statement. Appellant gave Falagario a written statement which stated how he and Marie Garcia murdered Eleanor Ginder. The statement said that appellant and Garcia needed money and a van to go to Chicago. He got a knife from his house and borrowed a sawed-off shotgun. He and Garcia waited for Carl Ginder to go to work, and then they told Eleanor that Carl was involved in a car accident. They offered to take Eleanor to the accident scene. They got into the Ginder's van. Marie drove, Eleanor sat in the front passenger seat, and appellant sat in the back. As they drove away appellant pulled Eleanor into the back of the van and hit her three of four times in the head with the shotgun. Marie parked the van and stabbed Eleanor several times with the knife. They took Eleanor's credit card and used it to buy electronics equipment at the Wal–Mart store in Rio Grande City. After pawning the merchandise they caught a bus to Chicago.

Dr. Ruben Santos performed the autopsy on Eleanor's body. His testimony showed that she had part of a blouse "stuffed" into her mouth and that her mouth, eyes, and face were covered with tape. Her hands were tied behind her back, and her feet were tied together. She received two blows to the head. She also had ten stab wounds; one in the left mandibular, one to the right of the Adam's Apple, three below the right collar bone, and five in the breast area. Some of the stab wounds to the breast area went through her heart and were sufficient to cause death.

### The Written Statement

■ By issue one appellant asserts that the trial court erred when it failed to suppress his written statement which he gave to law-enforcement officials in the

State of Illinois because the statement did not comply with article 38.22, section 2 of the Texas Code of Criminal Procedure. Specifically he complains that the warning required by article 38.22, section 2(a)(5), that is, the right to terminate the interview at any time, was not on the face of his written statement. He argues that Illinois officials were acting as agents for the State of Texas at the time they took his statement, and therefore, compliance with article 38.22 was required. Appellant filed a motion to suppress his written statement on that basis. The trial court held a hearing on the motion and after hearing the evidence admitted the statement in evidence.

Article 38.22, section 2 of the Texas Code of Criminal Procedure provides in part:

No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that:

(a) the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.17 of this code or received from the person to whom the statement is made a warning that:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time;

Tex.Code Crim. Proc. Ann. art. 38.22 § 2 (Vernon 1996).

The warnings appearing on the face of appellant's written statement are:

I understand that I have the right to remain silent and that anything I say can be used against me in a court of law. I understand that I have the right to talk to a lawyer and have him present with me during questioning, and if I cannot afford to hire a lawyer one will be appointed by the court to represent me before any questioning. Understanding these rights, I wish to give a statement.

The warnings on the face of appellant's written statement did not include the warning required by article 38.22, section 2(a)(5), *i.e.*, that he could terminate the interview at any time.

The case of *Alvarado v. State*, 853 S.W.2d 17 (Tex.Crim.App.1993) is helpful in resolving appellant's contention. In that case Eduardo Alvarado, a U.S. citizen, killed a man and wounded a second man in El Paso, Texas and then fled to Juarez, Mexico. The El Paso police notified police authorities in Juarez that Alvarado was a suspect for a murder committed in the U.S. The Mexican police caught Alvarado and obtained a written statement from him in which he confessed to the crimes which he had committed in El Paso. Alvarado was tried and convicted in Texas of voluntary manslaughter and attempted voluntary manslaughter based in part on the confession obtained by the Mexican police. On appeal to the court of criminal appeals Alvarado complained that the admission of the confession violated his Fifth and Fourteenth Amendment rights because the Mexican police, acting as agents for the El Paso police, obtained a confession from him without first reading him the *Miranda* warnings.

The *Alvarado* court stated that the purpose for the exclusion of evidence for violations of *Miranda* is to prevent governmental coercion by substantially deterring future violations of the constitution. *Alvarado*, 853 S.W.2d at 20. The court found

that *Miranda* did not generally apply to confessions obtained by foreign officials, stating:

> The clear import of *Miranda* is to require U.S. officials to notify accused persons of their constitutionally protected rights prior to any questioning. This prophylactic measure, protects our citizens from our state and our federal governmental actions. We know of no constitutional objective that would be served by extending *Miranda* to cases outside our borders. Because this is a question of interpretation of *Miranda* and whether it applies, we fail to see how the state and federal exclusionary rules could differ. Our exclusionary rule contained in article 38.23 of the Texas Code of Criminal Procedure excludes evidence obtained, in this case, in violation of *Miranda*. Therefore, the seminal question is the applicability of *Miranda* and not whether this is an exception to the state or federal exclusionary rules.

*Alvarado*, 853 S.W.2d at 21. The court noted that two exceptions have been carved out of the above-stated general rule. First the confession will be excluded if the circumstances surrounding the confession "shocks the conscience" of an American Court. *Alvarado*, 853 S.W.2d at 21–22. Second the confession will also be excluded when U.S. law-enforcement officials participate in the foreign interrogation or if the foreign authorities are acting as agents for their U.S. counterparts. *Alvarado*, 853 S.W.2d at 22. Concerning the first exception the court pointed out that Alvarado volunteered to give his confession to the Mexican police and did not complain of anything unusual or shocking about the manner in which his statement was obtained. *Alvarado*, 853 S.W.2d at 22. Concerning the second exception the *Alvarado* court stated that there was no evi-

dence that Texas authorities took part in the seizure of Alvarado in Mexico, or that Texas authorities took part in the taking of the confession by the Mexican police. *Alvarado*, 853 S.W.2d at 23.

In the instant case the *Miranda* warnings appeared on the front page of appellant's statement given to Illinois law-enforcement officials. *See Miranda v. Arizona*, 384 U.S. 436, 445, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[1] The evidence showed that appellant understood the warnings and that he waived them prior to giving his written statement. Although the front page of appellant's statement did not include the warning contained in article 38.22, section 2(a)(5)—the right to terminate the interview at any time—the circumstances of this case do not require exclusion of the statement from evidence for two reasons. First the statement's failure to include this warning would not prevent governmental coercion by substantially deterring future violations of the constitution. Article 38.22 is an evidentiary rule, not an exclusionary rule. *Alvarado*, 853 S.W.2d at 19 n. 3. The evidence does not show that Illinois law-enforcement officials coerced appellant into giving his written statement. Instead the evidence showed that he voluntarily gave the statement. Second Michael Falagario, the assistant state's attorney who took appellant's written statement, testified on direct-examination that before appellant gave his written statement he made sure that appellant understood his *Miranda* rights. On direct examination by the State's counsel Falagario testified as follows:

> I told him that if he decides to talk and changes his mind at any time we'll stop questioning. I said, " 'If you decide you don't want to talk, tell me, and the ques-

---

1. In *Miranda* the Court stated that before law-enforcement officials question a person in custodial interrogation they must warn the person that "he has a right to remain silent, that any statement he does make may be used

as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda*, 384 U.S. at 445, 86 S.Ct. 1602.

tioning will stop. If you decide during the middle that you want a lawyer with you, we'll stop, and we'll get you a lawyer.'" I asked him if he understood that. He said, "'Yes.'" I asked him, "'Do you understand everything I've told you?'" He said, "'Yes,'" and I ·asked him what he wanted to do.

Q. What was it he said to that?

A. He said that he would talk to me, and he would make a statement.

Thus appellant was warned that he had the right to terminate the interview at any time, although that particular notice did not appear on the face of appellant's written statement.

### Agency

■■■■ In *Alvarado* the court said that when an individual acts as an agent for law-enforcement officials the agent is bound by our confession rules. *Alvarado*, 853 S.W.2d at 22. The term "agency" denotes a consensual relationship existing between two persons, by virtue of which one of them is to act for and on behalf of the other. *Alvarado*, 853 S.W.2d at 22; *Ackley v. State*, 592 S.W.2d 606 (Tex.Crim. App.1980). The actual agency relationship may be express or implied from the parties' conduct. *Alvarado*, 853 S.W.2d at 22. The law does not presume an agency relationship, and the person alleging the relationship has the burden of proving it. *Alvarado*, 853 S.W.2d at 22.

In this case there is no evidence that Texas law-enforcement officials took part in appellant's arrest in Illinois, nor is there any evidence that they took part in the taking of his written statement. Although Homer Flores notified the Chicago police about the arrest warrant for appellant and his address in Chicago mere notification of the potential existence of a criminal in another jurisdiction is not enough to create an agency relationship. *See Alvarado*, 853 S.W.2d at 24. Because no agency relationship existed Illinois law-enforcement officials were not bound by our confession rules. *See Alvarado*, 853 S.W.2d at 22.

We hold that the trial court did not err by admitting appellant's written confession in evidence. We overrule the first issue.

### Video–Taped Statements

■■■■ By issue two appellant asserts that the trial court erred when it admitted in evidence his two video-taped statements because he had invoked his right to counsel before giving these statements. When an accused clearly invokes his Fifth Amendment right to counsel during custodial interrogation all interrogation must stop. *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Upton v. State*, 853 S.W.2d 548, 552 (Tex.Crim.App.1993). Once the accused invokes his Fifth Amendment right to counsel any waiver of counsel, to be effective, must be the product of either accused-initiated communications with the police, or police-initiated communications with the accused in the presence of counsel. *Edwards*, 451 U.S. at 484–85, 101 S.Ct. 1880; *Upton*, 853 S.W.2d at 552. The right to counsel is considered invoked when a person indicates he or she desires to speak to an attorney or have an attorney present during questioning. *Dinkins v. State*, 894 S.W.2d 330, 351 (Tex.Crim. App.1995); *Lucas v. State*, 791 S.W.2d 35, 45 (Tex.Crim.App.1989). The accused must make a clear and unambiguous invocation; the mere mention of the word "attorney" or "lawyer" without more does not automatically invoke the right to counsel. *Dinkins*, 894 S.W.2d at 351; *Robinson v. State*, 851 S.W.2d 216, 223 (Tex.Crim.App. 1991). When reviewing alleged invocations of the right to counsel we typically look at the totality of the circumstances surrounding the interrogation, as well as the alleged invocation in order to determine whether a suspect's statement can be construed as an actual invocation of his right to counsel. *Dinkins*, 894 S.W.2d at 351; *Lucas*, 791 S.W.2d at 45–46.

■■■■ At the suppression hearing the trial court is the sole judge of the weight and credibility of the evidence, and an

appellate court may not disturb the trial court's findings absent a clear abuse of discretion. *Alvarado v. State,* 912 S.W.2d 199, 211 (Tex.Crim.App.1995). The State has the burden to establish a valid waiver of the right to counsel. *Upton,* 853 S.W.2d at 553.

The record showed that appellant filed a motion to suppress his video-taped statements and that the trial court conducted a pre-trial suppression hearing on this issue. Appellant and two other witnesses, Homer Flores and Guillermo Pena, testified at the hearing. Flores, the investigator for the Starr County Sheriff's Office, testified that appellant arrived at the Starr County Jail from Chicago on January 22, 1995 and was taken before a magistrate. Flores spoke to appellant the next day and read him the rights contained in article 38.22, section 2. Flores asked appellant if he understood these rights, and appellant indicated that he did. According to Flores appellant had no questions and did not request an attorney or ask to remain silent. Flores asked appellant if he would give a video-recorded statement, and he agreed to do so. While taking his video-recorded statement Flores again read appellant the rights included in article 38.22, section 2. Flores asked appellant if he understood these rights, and he said "yes" and signed a written form. Flores also asked appellant if he wanted to waive these rights, and he said "yes" and indicated this on the form. This form was admitted in evidence at the suppression hearing. Right after appellant gave his first video-recorded statement he took Flores to the location of the offense, and the officers made a video recording of this location. Prior to making this second video-tape recording appellant had his rights reread to him. Flores' testimony showed that appellant did not ask for an attorney at any time. If appellant had requested an attorney Flores would have stopped the interview.

During the suppression hearing defense counsel questioned appellant about wheth-

er he had invoked his right to counsel as follows:

Q. So the next day you went and the officers brought you out. And then what happened?

A. After they brought me out, they took me to a room ... somewhere in the jail, and ... they asked me if I would like to make a statement on a video camera. I said ... I wanted to know if I could have a lawyer. I asked him. And he said, Well—well, would you agree to do this statement for us?

Q. Okay.

A. After that, I told them, yeah.

Q. Okay. Now, you asked for an attorney. Did you ask for any specific attorney or just for an attorney in general?

A. No, I just asked for an attorney in general.

Q. [D]o you remember the exact words you used or approximately the exact words you used?

A. The exact words I used is if I could speak to an attorney.

Q. And what was their response?

A. They said, well, would you agree to do this statement for us?

Q. What did you tell them at that point?

A. I told them yes.

Appellant's testimony showed that when he made the request for an attorney he was speaking to Officer Flores.

The State called Guillermo Pena as a rebuttal witness. Pena was in charge of the warrant division at the Starr County Sheriff's Office. He was present when appellant gave his first video-taped statement. Pena was also present when Flores read appellant his rights. According to Pena appellant did not ask for an attorney, and he did not hear appellant say that he wanted to remain silent.

After hearing the testimony the trial court denied the motion to suppress the two video recordings. Because the trial court could disbelieve appellant and be-

lieve Flores and Pena the record evidence supported the trial court's determination that appellant did not invoke his right to counsel. Therefore we discern no abuse of discretion and overrule the second issue.

By his third issue appellant asserts that the trial court erred when it admitted his two video-taped statements in evidence because they were "the fruits of his first illegal confession." The written statement which appellant gave to the Chicago police was not an illegal confession. Therefore the trial court did not err by admitting the two video recordings in evidence. We overrule the third issue.

### Lesser–Included Offense

■ By his fourth issue appellant asserts the court erred in failing to instruct the jury on the lesser-included offense of murder. Appellant's counsel requested the court to include an instruction on the lesser-included offense of murder. The court denied the request.

In *Rousseau v. State*, 855 S.W.2d 666 (Tex.Crim.App.1993) the court stated that the appropriate test to apply in determining whether an accused is entitled to a charge on a lesser-included offense is:

> [F]irst, the lesser included offense must be included within the proof necessary to establish the offense charged, and, second, some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. . . .
>
> In applying the two-prong test the trial court should make a determination as to whether the evidence of the lesser offense would be sufficient for a jury rationally to find that the defendant is guilty only of that offense, and not the greater offense.

*Rousseau*, 855 S.W.2d at 673 (footnote omitted).

■ In determining whether the trial court erred in failing to give a charge on the lesser-included offense we review all of the evidence presented at trial. *Rousseau*, 855 S.W.2d at 673; *Havard v. State*, 800 S.W.2d 195, 216 (Tex.Crim.App.1989) (opinion on reh'g).

■ Murder is a lesser-included offense of capital murder. *Ex parte McClelland*, 588 S.W.2d 957, 959 (Tex.Crim.App. 1979); *Dupnik v. State*, 654 S.W.2d 780, 789 (Tex.App.—Corpus Christi 1983, pet. ref'd). Thus appellant met the first prong of the test.

However appellant did not meet the second prong of the test. The State indicted appellant for the offense of committing capital murder on two theories: (1) that he intentionally caused the death of Eleanor Ginder while in the course of committing and attempting to commit the offense of robbery of the victim, and (2) that he intentionally caused the death of Eleanor Ginder while in the course of committing and attempting to commit the offense of kidnapping of the victim. The court included both of these theories in the charge. The jury was given only two options; it could either find appellant guilty of capital murder, or it could acquit him of capital murder. The option to find appellant guilty did not specify the underlying offenses of either kidnapping or robbery. Appellant argues that there was some evidence that if guilty he was only guilty of murder because there was an issue regarding the commission of the underlying felony of kidnapping, thereby meeting the second prong of *Rousseau*. However appellant does not contest the State's theory that he killed Eleanor while in the course of committing and attempting to commit the offense of robbery of the victim. Thus appellant has not met the second prong announced in *Rousseau*. Further the evidence is clear that Eleanor was killed while being robbed. The trial court did not err by refusing to instruct the jury on the lesser-included offense of murder. We overrule point four.

Transcript of Pre–Trial Hearing

By his fifth issue appellant complains that the trial court erred in denying him a copy of the transcript pertaining to his pre-trial suppression hearing. On March 5, 1997 the court heard appellant's motion to suppress his video-recorded statements. On March 6, 1997 defense counsel filed a motion requesting the trial court to direct the court reporter to prepare a transcript of the testimony of the pre-trial hearing. Counsel alleged in this motion that the information in the transcript was needed in order to insure the effective assistance of counsel and that appellant could not safely go to trial without this information, nor could he adequately prepare the defense to the charges against him. The trial court denied the motion.

An indigent defendant is entitled upon timely request to be furnished without cost, for use at a later trial, a transcription of his earlier mistrial, if it is needed for an effective defense. *Britt v. North Carolina*, 404 U.S. 226, 227, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971). The court of criminal appeals adopted the holding of *Britt* in the case of *Billie v. State*, 605 S.W.2d 558, 562 (Tex.Crim.App.1980). Shortly thereafter in *Armour v. State*, 606 S.W.2d 891 (Tex.Crim.App.1980) the court held that an accused is presumed to have a need for a transcription of the court reporter's notes from his first trial and does not have the burden of showing a particularized need for the transcript, nor of showing that the alternatives are inadequate. *Armour*, 606 S.W.2d at 894.

In *McKibbon v. State*, 749 S.W.2d 83 (Tex.Crim.App.1988) the court decided whether an accused had the right to a transcription of his co-defendant's prior trial. The court of criminal appeals stated that:

> [E]ach request should be treated on a case by case basis. The defendant should set out with specificity that portion of the testimony he desires from *any prior proceeding*, whether from his

own trial or that of a third party, *and demonstrate a particular need for a transcription of that evidence.* Much weight should be given to the trial judge's exercise of discretion after conducting a hearing on the particular request.

*McKibbon*, 749 S.W.2d at 85 (emphasis added). In denying the accused's request for the transcription the *McKibbon* court stated:

> [T]he appellant wholly failed to demonstrate a "particularized specific" need for the transcription of his co-defendant's trial. . . . Appellant merely alleged the copy of the third party's transcription was necessary to enable him to prove his defense of alibi. However, his "need" failed to meet the test of a "particularied, specific need." Appellant failed to explain the manner in which he would use the transcription to assist him in his alibi defense. Moreover, appellant failed to request specific passages of testimony, but requested the entire transcription of . . . [his co-defendants'] trial. As appellant failed to demonstrate a "particularized, specific need" for the transcription of his co-defendant's trial, we refuse to extend the presumption of need noted in *Armour, supra.*

*McKibbon*, 749 S.W.2d at 85 (citations and footnote omitted).

In the instant case appellant's motion neither indicated the specific passages of testimony needed nor demonstrated a particular, specific need for the transcript. The motion contained only unsubstantiated claims that appellant needed the transcript to insure effective assistance of counsel and to prepare a defense. The *McKibbon* court noted that the "[m]ere hope that a transcript may assist an attorney in preparing a case will not suffice" to show a particularized need for that transcript. *McKibbon*, 749 S.W.2d at 86. Appellant failed to explain the manner in which he would use the transcription to assist him in

his defense. By alleging that he needed the transcripts of the pre-trial hearing appellant does no more than express his hope that the transcript will assist him in his case. *See Melendez v. State*, 942 S.W.2d 76, 79 (Tex.App.—Corpus Christi 1997, pet. ref'd). As noted in *McKibbon* this does not rise to the level of showing a particularized need. Absent such a showing we find that the trial court was correct in overruling appellant's motion. We overrule the fifth issue.

### Ineffective Assistance of Counsel

■ By issue six appellant complains his trial counsel was ineffective because he did not strike venire person Susan Valverde. We review ineffective assistance of counsel claims under the two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The test requires the accused to show that: (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) there is a reasonable probability that but for counsel's deficient performance the result of the proceeding would have been different. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994). We examine the totality of the representation as reflected in the record in making this determination. *Jackson*, 877 S.W.2d at 771. The accused has the burden, and the appellate court applies a strong presumption that counsel's actions fell within the range of reasonable professional assistance. *Jackson*, 877 S.W.2d at 771.

During the voir dire of this case venireperson Susan Valverde told defense counsel that she was assaulted in 1991. Counsel did not strike her, and she served on the jury. However appellant does not show that there is a reasonable probability that but for counsel's failure to strike Susan Valerde the result of the proceeding would have been different. We overrule the sixth issue.

### Photographs

■ By his seventh issue appellant complains the trial court erred in admitting numerous photographs in evidence. The admissibility of a photograph is within the trial court's sound discretion. *Williams v. State*, 958 S.W.2d 186, 195 (Tex.Crim.App.1997). Generally a photograph is admissible if verbal testimony about matters depicted in the photographs is admissible. *Williams*, 958 S.W.2d at 195.

In this case the photos show the condition of Eleanor's body after the police had found her. Some of the photos show the wounds to the body, but none of them are overly graphic. The photos are not cumulative and were relevant to show the manner and means of Eleanor's death. We hold that the trial court did not abuse its discretion in admitting the photos in evidence. We overrule the seventh issue.

We AFFIRM the trial court's judgment.