IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 933-02






JAIME CHARLES NONN, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRTEENTH COURT OF APPEALS


HIDALGO COUNTY






 Meyers, J., delivered the opinion of the Court in which Keller, P.J., and
Price, Womack, Keasler, Hervey, Holcomb and Cochran, J.J., joined. Johnson, J.,
concurred.


O P I N I O N 



 Jaime Charles Nonn appeals from his conviction for capital murder. Tex. Penal
Code §19.03(2). Because the State chose not to seek the death penalty, the jury's finding
of guilt resulted in a sentence of life in prison. The Court of Appeals upheld his conviction. 
Nonn v. State, 13 S.W.3d 434 (Tex. App. - Corpus Christi 2000). This Court granted
appellant's petition for discretionary review to determine whether the admission at trial of
an out-of-state confession was governed by Article 38.22 of the Texas Code of Criminal
Procedure. (1) 

 When this case first came to us, we held that Article 38.22 was a procedural
evidentiary rule, and thus was applicable as the law of the forum in which the trial was held. 
Nonn v. State, 41 S.W.3d 677 (Tex. Crim. App. 2001). We vacated the judgment of the
Court of Appeals, and remanded to that court for a determination of whether the warnings
given to appellant substantially complied with the warnings required by Article 38.22. (2) On
remand, the Court of Appeals held that the warnings were not in substantial compliance with
Article 38.22, but that the erroneous admission of the statements did not affect a
"substantial right" of appellant. Nonn v. State, 69 S.W.3d 590 (Tex. App. - Corpus Christi
2001). We granted review a second time to determine whether, 

 [o]n remand, the appeals court reversibly erred in holding that appellant's
substantial rights were not implicated by the erroneous juried admission of
Nonn's "really strong confessional statement" taken as a result of custodial
interrogation in another state. 

Because the Court of Appeals did not perform the proper harm analysis, we will perform
our own analysis and we will affirm.

Facts:

 On December 24th, 1994, Starr County Sheriff's investigator Homer Flores found 

the body of 56-year-old Eleanor Ginder, who had been reported missing several days
earlier by her husband Carl. The Ginders were residents of San Juan, Texas. Ginder's body
was found inside her 1990 Chevy van, which was parked in a county park in Rio Grande
City, Texas. She had been bound and gagged, and tape had been placed over her face. She
had also been beaten about the head, and stabbed ten times. Police found a bent and
bloodstained kitchen knife in the glove compartment of the van, and a sawed-off shotgun
inside a cabinet at the rear of the van. Ginder had been dead for several days when her body
was found. The van was strewn with empty cardboard Wal-Mart boxes, which had at one
time contained home electronics and bore the serial numbers of those electronics. 

 Ginder's credit card had been used after her disappearance, and records of those
transactions led investigators to a Rio Grande City Wal-Mart, where a young man and
woman had purchased several television sets and other electronics whose serial numbers
matched those on the boxes found in Ginder's van. The young woman signed Eleanor
Ginder's name to the purchases. Pawn sale documents from Rio Grande City's only pawn
shop revealed that the same electronics, bearing the same serial numbers, had been sold for
cash at the shop on the same day. Appellant had used his own name and identification on
those pawn sale documents. Noting that appellant's address was next door to the Ginders'
residence, police went to that address, where the 19-year-old appellant lived with his
parents. 

 Police described the knife found in the van to appellant's parents. His mother then
produced a set of matching kitchen knives, one of which was missing. His parents informed
police that appellant and a female, 16-year-old Marie Garcia Vega, were staying with
relatives in Chicago. Descriptions of the suspects furnished by clerks in the Rio Grande
City Wal-Mart and the pawn shop matched appellant and Vega. Officer Flores then
obtained arrest warrants for appellant and Vega for kidnaping. He notified Chicago police,
via teletype, that Texas police were seeking the pair on a kidnaping warrant, with murder
charges pending. He furnished descriptions of both suspects, and the address of the relative
in Chicago. 

 Chicago Police Detective Gregory Baiocchi arrested appellant and Vega in Chicago. 
They were taken to a Chicago police station, where they were questioned separately by
police and prosecutors. Prior to questioning, Baiocchi advised appellant of his Miranda
rights, and appellant indicated that he understood them, and wished to make a statement. 
Cook County Assistant State's Attorney Michael Falagario met with appellant, informed
him that he was a prosecutor working with the police on the case, and again advised
appellant of his Miranda rights. Appellant indicated that he understood, and agreed to
make a statement, which would be summarized by Falagario in handwritten form. This
statement, confessing to and describing the details of the crime, is the subject of this
petition for review. 

 Testimony at trial established that Falagario sat with appellant in the interview room,
asked him questions, and then wrote summaries of the answers provided on a pre-printed
form. The form had spaces for essential information (time and location of the interview,
name of suspect, names of those present, etc.), and a typed version of the Miranda
warnings, with a line for the suspect to sign. After taking appellant's statement, Falagario
testified that he asked appellant to read parts of it back to him, including the typed Miranda
warnings. He then had appellant sign on the line under the warnings, and finished reading
the statement to appellant. Appellant made minor corrections, which he initialed, and the
statement was complete. 

 Appellant remained in custody in Chicago for approximately a month before he was
brought back to Texas. When appellant arrived in Texas, Officer Flores took a videotaped
statement, again documenting the commission of the crime. The videotape includes a
reading and explanation of the warnings required by Article 38.22, and appellant's statement
that he understood those warnings. A second videotape, made shortly thereafter, recorded
appellant taking police to the location where the van and body were found. 

Proceedings Below:

 At a pre-trial suppression hearing, the defense argued for the suppression of the two
videotaped statements. The State brought Officer Flores to testify to the circumstances
surrounding the taking of those statements. Flores described the warnings given to
appellant, and testified that appellant had indicated his understanding of the warnings, and
had signed a waiver, which was introduced into evidence at the hearing. The defense called
appellant, who testified that he had asked for an attorney before making the videotaped
statements, and that the officers had responded by implying that they would get him an
attorney if he made a statement first, which he agreed to do. On cross-examination,
appellant admitted that the warnings given to him when he was arrested in Chicago were
"substantially the same" as those later given to him by Officer Flores. He also testified that
he had requested an attorney in front of at least three police officers before giving the
videotaped statement. The State called another police officer to testify as a rebuttal
witness. This officer, who was also present during the videotaping, testified that he never
heard appellant ask for an attorney. 

 The defense argued that the videotaped confession should be suppressed because it
was obtained after appellant had invoked his right to counsel. Counsel also asserted that the
taint of an illegally obtained confession would carry over under the "cat out of the bag"
doctrine, rendering subsequent confessions inadmissible. At this pre-trial hearing, the
defense was referring only to the two videotaped statements made by appellant in Texas and
did not argue that the Chicago confession had tainted the Texas statements. The trial court
denied the motion to suppress the videotaped statements.

 At trial the State presented numerous witnesses, including the victim's husband,
various employees of the businesses in Rio Grande City where appellant and Vega used
Mrs. Ginder's credit card, and employees of the pawn shop where the pair pawned the
electronics. The State also called several police investigators, and the pathologist who
conducted the autopsy, all of whom testified about aspects of the physical evidence in the
case. Officer Flores testified about his investigation of the crime scene, and described how
the credit card records led police to appellant's home. He described his encounter with
appellant's parents, and the discovery of the set of kitchen knives matching the knife found
in the van. He also recounted how he learned from appellant's parents that appellant and
Vega were in Chicago, and learned the address at which they were staying. Flores then
testified that he obtained warrants for the pair's arrest, and that he teletyped Chicago Police
with the address and warrants. He described the apprehension of the pair in Chicago, and
their eventual transport back to Texas. 

 Officer Flores testified about the circumstances surrounding the giving of the two
videotaped statements in Texas, and the State offered the first videotape into evidence. At
that point, the defense objected, and requested a hearing outside the presence of the jury on
the issue of voluntariness. This hearing was essentially a re-argument of the pre-trial
hearing. The trial court again ruled that the videotape was admissible. 

 After the videotaped statement had been admitted and published to the jury, the State
asked for a conference, outside the presence of the jury. The State indicated that they
intended to call witnesses from Chicago to testify to the taking of appellant's Chicago
statement. At this time, the defense objected to the admission of the Chicago statement,
arguing that the statement taken by the Chicago police did not comply with the
requirements of Article 38.22. A hearing was held, and the State called Detective Baiocchi
to testify to the circumstances surrounding the taking of the Chicago statement. Baiocchi
described appellant's arrest, and testified that he orally administered Miranda warnings,
and that appellant stated that he understood his rights, and was willing to talk to police. 

 Assistant State's Attorney Michael Falagario then testified that he met with appellant
at the police station, identified himself, and advised appellant of his Miranda rights again. 
Falagario also stated that he advised appellant that he could terminate the interview at any
time. (3) He went on to testify about the taking of appellant's statement. When asked whether
he was aware, at the time, of the differences between Illinois law and Texas law, he
responded that he was not.

 The State argued that the statement should be admitted because the Chicago police
were acting according to Illinois procedure, in compliance with the requirements of the
U.S. Constitution, and Miranda, and were unaware of the additional requirements of Article
38.22. Moreover, the State argued that the Chicago police were not acting as agents for
Texas law enforcement when they took appellant's statement. The defense argued that the
Chicago police had no reason to take the statement unless they were acting as agents of
Texas law enforcement. Therefore, the statement should not be admitted, because it did not
comply strictly with the requirements of Article 38.22. The court disagreed and ruled the
statement admissible.

 After the hearing, appellant's written Chicago statement was introduced into
evidence, and published to the jury. The State rested shortly thereafter. The defense moved
for an instructed verdict, which was denied. Defense then waived opening statement,
rested, and closed without presenting evidence. The jury found appellant guilty, and he
received an automatic life sentence. 

 On direct appeal, appellant argued again that the Chicago statement should have been
suppressed because the warning that he could terminate the interview at any time did not
appear on the face of the statement, as required by Article 38.22. Nonn v. State, 13 S.W.3d
434 (Tex. App. - Corpus Christi 2000). The Court of Appeals looked to a case in which
this Court held that Miranda did not generally apply to confessions obtained by foreign
officials. Alvarado v. State, 853 S.W.2d 17 (Tex. Crim. App. 1993). In Alvarado, this
Court also noted two exceptions to that general rule. A confession obtained by foreign
officials will be excluded if the circumstances surrounding the confession "shock the
conscience" of an American court. Id. at 21-22. The confession will also be excluded if
U.S. law-enforcement officials participate in the foreign interrogation, or if the foreign
authorities are acting as agents for U.S. law enforcement. Id. at 22. The Court of Appeals
in this case applied Alvarado by analogy, holding that the circumstances of this case did
not shock the conscience, and that the Chicago police were not acting as agents for Texas
law enforcement. Nonn v. State, 13 S.W.3d at 439-440. The Court of Appeals affirmed
the trial court's judgment. Id. at 444.

 On original submission to this Court, we noted that we had recently held, in
Davidson v. State, 25 S.W.3d 183, 185-86 (Tex. Crim. App. 2000), that Article 38.22 is a
procedural evidentiary rule. Under basic conflict-of-law principles, the law of the forum in
which the judicial proceeding is held governs the admissibility of evidence. Therefore, we
held that the law of the State of Texas, in this case Article 38.22, governs the admissibility
of appellant's confession at trial in Texas. Nonn v. State, 41 S.W.3d 677 (Tex. Crim. App.
2001). We explained that "the relevant inquiry in this case is whether the oral statements
made by appellant as a result of custodial interrogation were obtained in compliance with
the dictates of art. 38.22, rather than the various issues of public policy and agency
addressed by the court of appeals." Id. at 679. 

 This Court also noted that the portion of Article 38.22 pertaining to oral statements
which are not electronically recorded, unlike the portion governing electronic recordings,
does not contain an express legislative mandate of "strict compliance." Id. at 679. We
cited several cases in which we had previously held that such oral statements need only
"substantially comply" with the warnings set out in Article 38.22. Id., citing Cockrell v.
State, 933 S.W.2d 73, 90-91 (Tex. Crim. App. 1996), cert. denied, 520 U.S. 1173, 117 S.
Ct. 1442, 137 L. Ed. 2d 548 (1997); Sosa v. State, 769 S.W.2d 909, 915-916 (Tex. Crim.
App. 1989); Bennett v. State, 766 S.W.2d 227, 230-231 (Tex. Crim. App. 1989), cert.
denied, 492 U.S. 911, 109 S. Ct. 3229, 106 L. Ed. 2d 578 (1989). We therefore sustained
appellant's ground for review, and remanded to the Court of Appeals to determine whether
the warnings given to appellant substantially complied with the requirements of Article
38.22. Nonn v. State, 41 S.W.3d at 679.

 On remand, the Court of Appeals held that the warnings given to appellant in Chicago
failed to substantially comply with Article 38.22, because one of the warnings was not
given in writing. Nonn v. State, 69 S.W.3d 590 (Tex. App. - Corpus Christi 2001). Having
determined that the trial court erred in admitting the statements, the Court of Appeals then
held that the erroneous admission nevertheless did not constitute reversible error. Id. at
593. The court cited to Davidson for the proposition that compliance with Article 38.22 is
not a constitutional issue, and therefore is subject to harm analysis under Texas Rule of
Appellate Procedure 44.2(b). Under Rule 44.2(b), the error will be reversible only if it
affected a substantial right of the defendant, i.e., if the error had a substantial or injurious
effect on the jury's verdict. Nonn v. State, 69 S.W.3d at 593, citing Morales v. State, 32
S.W.3d 862, 867 (Tex. Crim. App. 2000). The Court of Appeals held:

 [W]hen, as here, a statement is taken from a defendant as a result of custodial
interrogation in another state, and the evidence is undisputed that the
Miranda warnings were given to the defendant in writing and the additional
warning provided by article 38.22, that the defendant was entitled to stop the
interrogation at any time, was given orally, the substantial rights of the
defendant are not implicated. 


Nonn v. State, 69 S.W.3d at 593. The Court of Appeals therefore affirmed the trial court's
judgment. We granted review to determine whether the Court of Appeals' holding on
remand was erroneous. 

Arguments of the parties on petition for discretionary review:

 In his brief, appellant contends that the Court of Appeals reversibly erred in its harm
analysis. He points to the State's "repeated" references to the contents of the Chicago
statement during trial as an indication that the admission of the statement had a substantial,
prejudicial impact on the jury's verdict. Appellant also argues that the Court of Appeals'
finding that the admission of appellant's statement was harmless, while finding the
admission of the written statements of his co-defendant Marie Garcia Vega harmful, is a
violation of federal and state equal protection guarantees. See Vega v. State, 32 S.W.3d
897, 905-906 (Tex. App. - Corpus Christi 2000), reversed and remanded, 84 S.W.3d 613
(Tex. Crim. App. 2002).

 The State counters that the erroneous admission of appellant's Chicago statement
did not affect a substantial right. In support of this argument, the State points to the two
subsequent statements made to Texas authorities by appellant, which contained substantially
the same information as the Chicago statement. The State emphasizes that these other
statements were properly admitted at trial. In addition, the State denies that great emphasis
was put on the Chicago statement at trial. Even if the trial court had excluded the Chicago
statement, the State speculates that the court would likely have admitted testimony about
oral statements made by appellant to the Chicago law enforcement officers. Moreover, the
State contends that the purpose underlying Article 38.22 was served by the oral warning
appellant received, and that the statement should therefore be admitted. The State also
argues that Vega's case is not analogous to appellant's case because she, unlike appellant,
never gave another statement after returning to Texas. Finally, the State argues that the
probable "collateral implications" of the erroneous admission, and the weight accorded to
the statement by the jury are "minimal," and that declaring the error harmless would be
unlikely to encourage the State to repeat the error. 

Standard of review:

 When this Court held that Article 38.22 was a "procedural evidentiary" rule, we
explained:

 [A]rticle 38.22 merely prescribes the various requirements that must be
satisfied before a statement made by an accused as a result of custodial
interrogation will be admitted against him/her at trial. That such
requirements are not met does not mean that the statement was necessarily
obtained as a result of any legal or constitutional violation. . . 


Davidson, 25 S.W.3d at 186. As the Court of Appeals in this case correctly noted on
remand, appellant's statement was not taken in violation of Miranda. Nonn, 69 S.W.3d at
593. Therefore, the erroneous admission of that statement is appropriately characterized
as a "non-constitutional" error. 

 Texas Rule of Appellate Procedure 44.2(b) defines the harm analysis to be used
when considering "non-constitutional" errors. (4) We have held that, in applying Rule 44.2(b),
"an appellate court need only determine whether or not the error affected a substantial right
of the defendant. To make this determination, appellate courts must decide whether the
error had a substantial or injurious affect (sic) on the jury verdict." Llamas v. State, 12
S.W.3d 469, 471 & n.2 (Tex. Crim. App. 2000). We elaborated on this process in Morales
v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000):

 In assessing the likelihood that the jury's decision was adversely affected by
the error, the appellate court should consider everything in the record,
including any testimony or physical evidence admitted for the jury's
consideration, the nature of the evidence supporting the verdict, the character
of the alleged error and how it might be considered in connection with other
evidence in the case. The reviewing court might also consider the jury
instruction given by the trial judge, the State's theory and any defensive
theories, closing arguments and even voir dire, if material to appellant's
claim. 

Id., citing Llamas, 12 S.W.3d at 471.

 In this case, the Court of Appeals on remand held that the erroneous admission of
appellant's Chicago statement did not affect a substantial right. Nonn v. State, 69 S.W.3d
at 593. Although the court cited Morales, the language of the holding indicates that the
court performed the harm analysis incorrectly. Rather than examining the other evidence
and arguments presented at trial to determine whether the erroneous admission might have
affected the jury verdict, the Court of Appeals focused on the totality of circumstances
surrounding the taking of the statement. The court essentially determined that the
statement was voluntary despite the missing warning, and thus that the substantial rights of
appellant were not implicated. Id. Because the Court of Appeals did not perform a
complete harm analysis, we will do so now.

Equal protection:

 First, we will address appellant's contention that the Court of Appeals' holding of 

harmless error in the admission of his statement, while holding that the admission of his
co-defendant's statement was reversible error, implicates equal protection issues. Under
Article I, Section 3 of the Texas Constitution, and the Fourteenth Amendment to the U.S.
Constitution, all persons similarly situated are guaranteed equal protection under the laws
of this State and of the United States. Vasquez v. State, 739 S.W.2d 37, 43 (Tex. Crim.
App. 1987). In this case, appellant's argument must fail because he and his co-defendant,
Marie Garcia Vega, were not "similarly situated." Vega, unlike appellant, was a juvenile at
the time of her arrest. The admissibility of her statement was governed by the Texas Family
Code, rather than by the Texas Code of Criminal Procedure. Vega v. State, 84 S.W.3d 613
(Tex. Crim. App. 2002). Unlike appellant, Vega did not make any subsequent statements to
police in Texas. Therefore, her Chicago statement played a much more important role in
the State's evidence against her at trial. Vega v. State, 32 S.W.3d 897, 906 (Tex. App. -
Corpus Christi 2000), rev'd by 84 S.W.3d 613 (Tex. Crim. App. 2002). For these reasons,
we reject appellant's equal protection argument.

Error analysis:

 Appellant argues that the erroneous admission of his Chicago statement could have
adversely affected the jury's verdict because the State emphasized the statement during
various stages of the trial, beginning with voir dire and continuing through closing
arguments. Arguing that the videotaped confessions given to Texas law enforcement were
fruits of the Chicago statement, and thus should not have been admitted, appellant asserts
that the remaining evidence of his guilt was "tenuous." 

 In Griffin v. State, 765 S.W.2d 422 (Tex. Crim. App. 1989), this Court addressed
the validity of the "cat out of the bag" theory. That theory posits that once a confession is
obtained illegally, any subsequent statements may be tainted by the illegality infecting the
first, inadmissible confession. Griffin involved a juvenile who was questioned about her
involvement in a murder, and who made two incriminating statements. The first of those
statements was held inadmissible because it did not meet the requisites of the section of
the Texas Family Code governing admissibility of oral statements taken from juveniles. Id.
at 425. Although the second statement was taken in accordance with the Family Code
section, the juvenile was not aware that the first statement could not be used against her at
trial when she made the second statement. Therefore the Court of Appeals held that the
second confession was not voluntary, and was therefore inadmissible under the "cat out of
the bag" theory. Id. However, on discretionary review this Court reversed the judgment of
the Court of Appeals, pointing out that there was no evidence that the first statement,
although inadmissible, was actually involuntary. Therefore, the warnings given before the
subsequent statement sufficed to remove the conditions that precluded admission of the
first statement. Id. at 431; see also Oregon v. Elstad, 470 U.S. 298, 318, 105 S. Ct. 1285,
311 84 L. Ed. 2d 222 (1985) ("a suspect who has once responded to unwarned yet
uncoercive questioning is not thereby disabled from waiving his rights and confessing after
he has been given the requisite Miranda warnings.") 

 This case presents a situation much like that in Griffin and Elstad. Although
appellant's Chicago statement did not conform to the requirements of Article 38.22, it did
meet the criteria of Miranda, and appellant produced no evidence that the statement was
not voluntary. Although appellant was not aware that the Chicago statement could not be
used against him, there is no indication that the making of that statement influenced
appellant's decision to make further statements to Texas law enforcement authorities a
month later. The Texas statements, which did conform to the requirements of Article
38.22, bear no indicia of having been coerced. Therefore, the Texas statements would, in
all likelihood, have been admissible at trial even if the Chicago statement had been ruled
inadmissable. 

 Because the Texas statements contained much of the same information as the
Chicago statement, the erroneous admission of the Chicago statement may not have had any
significantly adverse effect on the jury's verdict. See Sterling v. State, 800 S.W.2d 513,
520 (Tex. Crim. App. 1990), cert. denied, 501 U.S. 1213, 115 L. Ed. 988, 111 S. Ct. 2816
(1991); Daniel v. State, 668 S.W.2d 390, 392 (Tex. Crim. App. 1984).

 Appellant argues that the State's "repeated references" to the contents of the
Chicago statement at trial are probative of its importance to the State's case, and thus of the
harm resulting from its erroneous admission. A review of the testimony and arguments at
trial, however, reveals few specific references to the Chicago statement. Much of the
evidence used against appellant at trial was obtained before appellant was arrested in
Chicago, and thus is not traceable to the improperly admitted statement. The credit card
receipts and pawn documents which originally led police to appellant, the knife used in the
murder and the matching kitchen knives from appellant's home, the testimony of the store
employees in Rio Grande City identifying appellant and Vega--all these vital pieces of the
State's case were obtained independently of the Chicago statement. 

 We have held that properly admitted evidence of guilt is one factor to be considered
when performing a harm analysis under Rule 44.2(b). Motilla v. State, 78 S.W.3d 352
(Tex. Crim. App. 2002). Another relevant factor is "the character of the alleged error and
how it might be considered in connection with other evidence in the case." Id. at 359,
quoting Morales v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). Appellant's
Chicago statement was admitted at trial only after the jury had already heard the testimony
regarding physical evidence, and had viewed the videotaped Texas statements. The Chicago
statement, although powerful evidence by itself, contained essentially the same information
as the Texas statements. The impact of the erroneously admitted statement when
considered in connection with the videotaped statements was likely not significant. Even if
the Texas statements had not been admitted, the Chicago statement would have added little
to the circumstantial evidence presented by the State at trial. For these reasons, we
conclude that the erroneous admission of appellant's statement to Chicago law
enforcement officers was harmless error. We therefore affirm the judgment of the Court
of Appeals.


 Meyers, J.


Delivered: October 15, 2003

Publish

1. Unless otherwise indicated all future references to Articles refer to the Code of Criminal
Procedure. 
2. The version of Article 38.22 in effect at the time of the events in question read, in relevant part:


Sec. 2. No written statement made by an accused as a result of custodial interrogation is admissible as
evidence against him in any criminal proceeding unless it is shown on the face of the statement that: 

 

 (a) the accused, prior to making the statement, either received from a magistrate the warning
provided in Article 15.17 of this code or received from the person to whom the statement is made a
warning that: 

 

 (1) he has the right to remain silent and not make any statement at all and that any statement he makes
may be used against him at his trial; 

 

 (2) any statement he makes may be used as evidence against him in court; 

 

 (3) he has the right to have a lawyer present to advise him prior to and during any questioning; 

 

 (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior
to and during any questioning; and 

 

 (5) he has the right to terminate the interview at any time; and 

 

 (b) the accused, prior to and during the making of the statement, knowingly, intelligently, and
voluntarily waived the rights set out in the warning prescribed by Subsection (a) of this section. 
3. This particular warning, which was not part of the Miranda warnings printed on the face of the
statement taken from appellant in Chicago, is one of those required by Article 38.22 to appear on the
face of any statement resulting from custodial interrogation before such a statement can be admitted as
evidence against a defendant in a criminal trial. See Article 38.22(a)(5) in note 2, supra. 
4. The full text of Rule 44.2 is as follows:

 44.2 Reversible Error in Criminal Cases. 


 (a) Constitutional error. 

 

 If the appellate record in a criminal case reveals constitutional error that is subject to harmless
error review, the court of appeals must reverse a judgment of conviction or punishment unless
the court determines beyond a reasonable doubt that the error did not contribute to the
conviction or punishment. 


 (b) Other errors. 

 

 Any other error, defect, irregularity, or variance that does not affect substantial rights must be
disregarded.