2020 IL App (3d) 180551

Opinion filed December 21, 2020

Modified upon denial of rehearing February 8, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0551 Circuit No. 11-CF-2122 |
| | ) | |
| WILLIAM J. JENKINS, | ) ) | Honorable Sarah F. Jones, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE WRIGHT delivered the judgment of the court, with opinion.
Presiding Justice McDade and Justice O'Brien concurred in the judgment and opinion.

_____

**OPINION**

¶ 1      Defendant, William J. Jenkins, an indigent defendant, appeals the second-stage dismissal

of his amended postconviction petition on the grounds that the circuit court deprived him of his

equal protection right to free access to certain materials necessary to prepare a defense. Defendant

argues that he did not receive the effective assistance of counsel in the circuit court and on appeal

because the issue was neither preserved by posttrial counsel nor recognized and raised by appellate

counsel.

¶ 2    The State argues that the dismissal of defendant's postconviction petition was proper because defendant was not entitled to free access to his codefendant's trial transcripts and also contends that trial and appellate counsel did not provide deficient representation by declining to preserve or raise that issue. We reverse the circuit court's dismissal of defendant's postconviction petition, vacate defendant's convictions, and remand for further proceedings.

¶ 3                                   I. BACKGROUND

¶ 4    Defendant and codefendant, Ira D. Cunningham, were jointly charged in the same information with two felonies and one misdemeanor offense: residential burglary, theft, and obstructing identification, respectively. Later, the State increased defendant's charges to four felonies based on a subsequent indictment as follows:

        Count I—Ira D. Cunningham and William J. Jenkins: residential burglary

        Count II—William J. Jenkins: burglary

        Count III—Ira D. Cunningham and William J. Jenkins: theft

        Count IV—Ira D. Cunningham: obstructing justice

        Count V—William J. Jenkins: obstructing justice

¶ 5    The court appointed the office of the public defender to represent defendant. However, defendant elected to proceed as a self-represented litigant with respect to the indicted charges he was facing for residential burglary (720 ILCS 5/19-3 (West 2010)) as alleged in count I, burglary (*id.* § 19-1(a)) as alleged in count II, and theft (*id.* § 16-1(a)(4)(A), (b)(4)) as alleged in count III.

¶ 6    At some point, defendant's and Cunningham's cases were severed, and Cunningham's trial took place first. Defendant's jury trial was scheduled to commence on Monday, August 20, 2012. On Friday, August 17, 2012, the parties convened for a final pretrial conference. During that court appearance, defendant inquired of the court: "Your Honor, what is the verdict on Mr.

2

Cunningham's case?" The court replied that Cunningham, a codefendant in Will County case No. 11-CF-2122, had been found guilty on all counts.[1]

¶ 7     Defendant requested transcripts of his codefendant's trial, indicating that such transcripts would allow him to identify any discrepancies in the testimony of witnesses testifying at both trials. The following exchange ensued:

"THE COURT: *** I can tell you right now that the court reporters don't have magic wands; that they cannot produce transcripts out of thin air.

If I put it over Friday until Monday morning, can you afford these transcripts ***?

THE DEFENDANT: No. I am indigent.

THE COURT: You do not have a right to free transcripts for trial ***."

Defendant stated that the transcripts were necessary. The colloquy continued:

"THE COURT: As it exists right now you do not have a right to them for free. You don't. You didn't want the Public Defender's Office. Public Defender might have been able to obtain those for you. You didn't want them to represent [you] ***. This is what happened.

I can get the court reporters to put together a statement for you, but they can't have it done overnight.

*** [Y]ou don't get them for free.

THE DEFENDANT: I would like a statement if that's—

THE COURT: *** [H]ow many witnesses do we have?

---

[1]According to the State's motion to dismiss defendant's postconviction petition, Cunningham's trial was held in July 2012. No more specific date is found in the record.

[THE STATE]: Seven to nine witnesses and jury selection. We're doing opening statements, closing arguments, return a verdict.

THE COURT: I can see it. I looked at Mr. Cunningham's docket. My court reporters do work very hard. If we can get some ballpark, can I tell him in the thousands. Would it be fair?

[THE STATE]: Yes.

THE COURT: You don't get them for free. You don't have a right for them free transcripts [*sic*]. You don't have a right to them for free.

Motion for transcripts is denied."

¶ 8        Defendant's jury trial began on August 20, 2012, as scheduled. Upon completion of the four-day trial, the jury found defendant guilty on all counts.

¶ 9        The public defender represented defendant for purposes of his posttrial proceedings. The public defender filed a motion for a new trial, which the circuit court denied. The court sentenced defendant to concurrent terms of 20 years' imprisonment for residential burglary and burglary, as well as concurrent terms of 5 years' imprisonment for theft and obstructing justice. Defendant filed a *pro se* motion to reconsider sentence, which the court denied.

¶ 10       On direct appeal, defendant argued that his sentences for theft and obstructing justice were improper insofar as the court believed he was extended-term eligible on those charges. This court agreed and remanded the matter for resentencing on those convictions. *People v. Jenkins*, No. 3-13-0547 (2015) (unpublished summary order under Illinois Supreme Court Rule 23(c)). The circuit court subsequently resentenced defendant to terms of five years' and three years' imprisonment for theft and obstructing justice, respectively.

4

¶ 11 On November 30, 2015, defendant filed a *pro se* petition for postconviction relief. In his petition, defendant claimed, *inter alia*, that he "was denied the right to free Transcript[s] of his Co-Defendant Trial's [*sic*]." The court appointed counsel to represent defendant in postconviction proceedings, and counsel filed an amended petition.

¶ 12 The amended postconviction petition alleged that the denial of access to free transcripts violated defendant's rights to due process and equal protection. The amended petition also alleged that posttrial counsel rendered ineffective assistance for failing to raise the transcript issue in his motion for new trial and that appellate counsel was similarly ineffective for failing to raise the transcript issue on direct appeal.

¶ 13 The State filed a motion to dismiss defendant's amended petition. The State's motion asserted, *inter alia*, that the transcripts from Cunningham's trial were unavailable at the time of defendant's request and that defendant was not entitled to free copies of those transcripts.

¶ 14 The court granted the State's motion to dismiss defendant's amended petition. This appeal follows.

¶ 15 II. ANALYSIS

¶ 16 On appeal, defendant argues that the circuit court erroneously dismissed his amended postconviction petition. The amended postconviction petition alleged that the denial of access to free transcripts of his codefendant's trial violated defendant's constitutional rights to due process and equal protection. The amended petition also alleged that defendant received ineffective assistance of both trial and appellate counsel because neither attorney raised the circuit court's refusal to provide a free transcript of his codefendant's trial as grounds to set aside his convictions. Since there are no disputed facts, defendant requests that this court provide direct relief by vacating

his convictions and remanding to the circuit court for a new trial rather than a third-stage evidentiary hearing.

¶ 17    The State contends that the amended postconviction petition lacked merit and was properly dismissed by the trial court. In support of this argument, the State relies on the decision from the United States Supreme Court in *Britt v. North Carolina*, 404 U.S. 226 (1971). Without the existence of judicial error, the State asserts that neither posttrial counsel nor appellate counsel could be criticized as ineffective for failing to challenge a correct ruling by the trial court. Next, a brief discussion of the conduct that constitutes ineffective assistance of counsel is in order.

¶ 18    The sixth amendment guarantees a defendant's right to effective assistance of counsel in all critical stages of criminal proceedings. U.S. Const., amend. VI; *People v. Hughes*, 2012 IL 112817, ¶ 44. This includes a right to the effective assistance of counsel on direct appeal (*People v. Easley*, 192 Ill. 2d 307, 328 (2000)) and in posttrial proceedings (*People v. Miller*, 2020 IL App (1st) 163304, ¶ 61). However, appellate counsel is not obligated to raise "every conceivable issue on appeal." *People v. Williams*, 209 Ill. 2d 227, 243 (2004). A claim of ineffective assistance of appellate counsel will succeed only where a defendant shows that counsel was objectively unreasonable in failing to raise a claim on appeal and that, absent that failure, the defendant's conviction would have been reversed on direct appeal. *Id.* Thus, such a claim turns on whether the claim at issue was meritorious. *Easley*, 192 Ill. 2d at 329 ("[U]nless the underlying issues are meritorious, defendant has suffered no prejudice from counsel's failure to raise them on appeal.").

¶ 19    Accordingly, this court must first decide the underlying issue, namely, whether this indigent defendant's request for a free transcript of his codefendant's trial should have been granted by the trial court pursuant to the equal protection clause of our constitution. If so, then we will address whether the failure of counsel to preserve or address the transcript issue constituted

6

deficient legal representation. Finally, we will examine whether the deficient representation, if any, resulted in prejudice to defendant and warrants postconviction relief.

¶ 20                                A. Equal Protection Considerations

¶ 21                            1. Precedent from the United States Supreme Court

¶ 22        An indigent defendant's equal protection right to free access to transcripts of circuit court proceedings evolves from a trio of cases decided by the United States Supreme Court beginning in the 1950s. In *Griffin v. Illinois*, 351 U.S. 12 (1956), the Court held that equal protection demands that an indigent defendant be provided with free transcripts of his previous trial, or an adequate alternative, for the purposes of direct appeal. After observing that every defendant is entitled to purchase his own transcripts if he has sufficient means, the Court commented:

> "Providing equal justice for poor and rich, weak and powerful alike is an age-old problem. People have never ceased to hope and strive to move closer to that goal. *** Both equal protection and due process emphasize the central aim of our entire judicial system—all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American court.' " *Id.* at 16-17 (quoting *Chambers v. Florida*, 309 U.S. 227, 241 (1940)).

The Court further opined that the denial of adequate appellate review to the indigent was an "invidious discrimination[ ]" that ran contrary to the equal protection clause. *Id.* at 18. The *Griffin* Court declared bluntly: "There can be no equal justice where the kind of trial a man gets depends on the amount of money he has." *Id.* at 19.

¶ 23        Eleven years later, in *Roberts v. LaVallee*, 389 U.S. 40 (1967), the Supreme Court recognized that an indigent defendant was entitled to a free transcript of his preliminary hearing as a matter of equal protection. In so holding, the Court reiterated:

"Our decisions for more than a decade now have made clear that differences in access to the instruments needed to vindicate legal rights, when based upon the financial situation of the defendant, are repugnant to the Constitution. *** '[T]o interpose any financial consideration between an indigent prisoner of the State and his exercise of a state right to sue for his liberty is to deny that prisoner the equal protection of the laws.' " *Id.* at 42 (quoting *Smith v. Bennett*, 365 U.S. 708, 709 (1961)).

¶ 24 In his dissent, Justice Harlan observed that both the defendant and defendant's attorney had been present at the preliminary hearing and should have had notice of the contents of that hearing. *Id.* at 43 (Harlan, J., dissenting). Justice Harlan's dissent pointed out that the defendant had not "suggested any use to which the preliminary hearing transcript could have been put, although [having been present at the hearing] he is in a position to know what it contains." *Id.* Consequently, Harlan cautioned that the majority's holding created precedent that could mandate "any document related to the criminal process, no matter how demonstrably trivial its significance, must be supplied free to indigents simply because the State is willing to make it available to others able to pay for it." *Id.* Harlan concluded that he "would at least undertake to examine the importance of the particular document in question." *Id.* at 44.

¶ 25 Four years later, the Supreme Court had an opportunity to act on Justice Harlan's concerns. In *Britt*, an indigent defendant requested a transcript of a prior mistrial in his own case. The Court developed a two-factor test for determining the importance of the requested transcript for purposes of developing a defense strategy. The Court opined:

"In prior cases involving an indigent defendant's claim of right to a free transcript, this Court has identified two factors that are relevant to the determination

8

of need: (1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript." *Britt*, 404 U.S. at 227.

¶ 26 Significantly, the Court held that the defendant was not obligated to make a "particularized showing of need" for a transcript of his prior mistrial because the importance of that particular transcript was so obvious that its value to a defendant should be presumed by the trial court. *Id.* at 228. The Court observed as follows:

> "Our cases have consistently recognized the value to a defendant of a transcript of prior proceedings, without requiring a showing of need tailored to the facts of the particular case. *** [E]ven in the absence of specific allegations it can ordinarily be assumed that a transcript of a prior mistrial would be valuable to the defendant in at least two ways: as a discovery device in preparation for trial, and as a tool at the trial itself for the impeachment of prosecution witnesses." *Id.*

¶ 27 It should be noted that the defendant in *Britt* conceded that adequate alternatives were available to him. *Id.* at 230. Nonetheless, the Court emphasized that, in the absence of such a concession, the second prong of the *Britt* test does not place the burden of the person requesting a free transcript to "bear the burden of proving inadequate such alternatives as may be suggested by the State or conjured up by a court in hindsight." *Id.*

¶ 28                          2. Precedent from Illinois Case Law

¶ 29 After the *Britt* decision in 1971, several decisions in this state addressed the issue of an indigent defendant's right to free access to the transcripts of a codefendant's proceeding. Surprisingly, those courts did not acknowledge or rely upon *Britt* when deciding this issue. For example, in 1972, the First District held that the defendant was entitled to a new trial on the grounds

that the defendant's request for a free transcript of his codefendants' trial should have been granted. *People v. Russell*, 7 Ill. App. 3d 850 (1972). Citing Illinois cases adopting the rule that an indigent defendant is entitled to free mistrial transcripts, the *Russell* court—without further analysis or reference to *Britt*—concluded that the same rule applied to transcripts of a codefendant's trial. *Id.* at 852.

¶ 30    Similarly, without reference to *Britt*, this court reached the same conclusion in *People v. Hudson*, 7 Ill. App. 3d 333, 338 (1972). In *Hudson*, the defendant requested a free transcript of his own prior mistrial *and* a free transcript of a codefendant's separate trial. In that decision, this court opined that an indigent defendant "would ordinarily be entitled to these materials upon a timely request." *Id*. Our court ordered that the transcripts of the codefendant's trial should be supplied to the defense, free of charge, prior to the new trial. *Id.* Both of these decisions support the defendant's position in this appeal.

¶ 31    However, 20 years later this court seemed to step back from the language in *Hudson*. In *People v. Rial*, 214 Ill. App. 3d 420 (1991), the defendant raised nine contentions of error, including a claim that he was erroneously denied a free transcript of his codefendant's trial. Referencing *Griffin* but without mentioning *Britt*'s two-part test, this court stated: "While the law holds that an indigent defendant is entitled to a free transcript of his own trial (*Griffin*, [351 U.S. 12]), it does not hold he is entitled to a free transcript of someone else's trial." *Id.* at 425. In a slightly different context, in *Harris v. State*, 212 Ill. App. 3d 13 (1991), this court upheld the *denial* of an indigent defendant's request for a free transcript of a codefendant's trial but once again did not apply or reference the *Britt* two-part test.

¶ 32    Consequently, the case law from this court is conflicting and has yet to specifically apply the two-part *Britt* test. Therefore, instructive guidance can be found in the decisions applying the *Britt* test from some courts of other jurisdictions.

¶ 33                              3. Precedent from Other Jurisdictions

¶ 34    Without exception, the case law from other jurisdictions that we have examined provides that equal protection considerations mandate free access to transcripts of prior proceedings for indigent defendants under limited conditions. The majority of these decisions employ an analysis that narrowly construes *Britt*. *E.g.*, *State v. Peterson*, 349 N.E.2d 308, 430, 434 (Ohio 1976); *McKibbon v. State*, 749 S.W.2d 83, 85-86 (Tex. Crim. App. 1988) (*en banc*); *Phillips v. State*, 65 So. 3d 971, 1001 (Ala. Crim. App. 2010); *Harris v. Stovall*, 212 F.3d 940, 945 (6th Cir. 2000); *State v. Oswald*, 606 N.W.2d 238, 250 (Wis. Ct. App. 1999).

¶ 35    Those courts narrowly construing *Britt* limited *Britt*'s holding to the facts of that case. *E.g.*, *Harris*, 212 F.3d at 945 ("Petitioner has not cited any Supreme Court authority extending the principles of *Britt* to an indigent defendant's request for free copies of transcripts from a prior trial of his codefendants ***."); *Oswald*, 606 N.W.2d at 250 ("The Supreme Court has not extended *Britt*'s presumption of usefulness to transcripts of other people's trials and we decline to do so here.").

¶ 36    In contrast, a minority of decisions from other jurisdictions have adopted a more expansive view of the holding in *Britt*. These courts have applied a rebuttable presumption of value of a codefendant's trial. This approach does not require an indigent defendant to first make a showing of particularized need for the free transcript. *E.g.*, *State v. Scott*, 319 P.3d 252, 262 (Haw. 2013); *United States v. Sheppard*, 559 F. Supp. 571, 572-73 (E.D. Va. 1983); see also *Woods v. Superior Court*, 268 Cal. Rptr. 490, 492-93 (Ct. App. 1990) (applying *Britt* presumption to transcript of

prior civil hearing); *Beasley v. State*, 404 P.2d 911, 913 (Nev. 1965) (finding a defendant *per se* entitled to codefendants' trial transcripts under *Griffin*, rather than *Britt*).

¶ 37 Notably, this case law recognizes that a transcript of a codefendant's trial can be even *more* valuable to the defense than a transcript of a prior mistrial. *Scott*, 319 P.3d at 260; *McKibbon*, 749 S.W.2d at 87 (Clinton, J., dissenting). We share this view. Clearly, the acquisition of a codefendant's trial transcript has the added value of negating the "considerable strategic advantage" gained by the State when it is essentially presenting the same evidence twice to different triers of fact. *Scott*, 319 P.3d at 260. Given these obvious benefits, logic leads us to the conclusion that any defendant who could afford to do so would undoubtedly seek out the transcripts from a codefendant's trial in anticipation of his own trial. See *Sheppard*, 559 F. Supp. at 573 ("The Court believes defense counsel, if representing a non-indigent defendant, would have to obtain the [codefendants'] transcript sought here in order to keep his representation within the 'range of competence demanded of attorneys in criminal cases.' " (quoting *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970))).

¶ 38 After careful consideration, we conclude that the Supreme Court's holding in *Britt* should be broadly construed. See *McKibbon*, 749 S.W.2d at 87 (Clinton, J., dissenting) ("*Britt* is merely an application of a broader principle to a given situation, as the Supreme Court itself made abundantly plain ***."). As a result, we hold that the presumption of value applies equally to requests for free access to transcripts of preliminary hearings in the same case, free transcripts of prior mistrials in the same case, and free transcripts of a codefendant's trial.

¶ 39 Arguably, the transcript defendant seeks could be viewed as a transcript directly linked to the same criminal prosecution, since both defendants were charged in two counts, counts I and III, of the same five-count indictment before severance. Even viewing the codefendant's trial on

counts I, II, III, and V as a separate proceeding due to severance, without question, counts I and III involved the same allegations of fact against both defendants and would presumably involve the presentation of the same or very similar evidence to the separate triers of fact. Under these circumstances, we hold that the transcript of the codefendant's trial in this appeal should be viewed as presumptively valuable to defendant's preparation for his own trial. This approach is consistent with the outcome of our previous decision in *Hudson.*

¶ 40　　　　This holding also finds support in our supreme court rule governing the production of discovery, which actually mandates the State to turn over to the defense the "relevant written or recorded statements" of witnesses the government intends to call in a defendant's impending trial, as well as "memoranda containing substantially verbatim reports of their oral statements." Ill. S. Ct. R. 412(a)(i) (eff. Mar. 1, 2001). Logically, in some cases, a codefendant's trial transcript may qualify as a recorded oral statement of a common witness that is subject to disclosure. As observed by the court in *People v. Jones*, 245 Ill. App. 3d 674, 678 (1993) ("The purpose of Rule 412(a)(ii) is to protect a defendant from surprise and inadequate preparation at trial by allowing defense counsel to investigate the circumstances surrounding any statements.").

¶ 41　　　　Nonetheless, it must be recognized the presumption of value pertaining to a codefendant's trial transcript is never conclusive and may always be rebutted by the State. Our view places the burden on the prosecution, the party with superior means and access to information in comparison to an indigent defendant, to rebut the threshold presumption of value of both mistrials and trials of other similarly charged codefendants.

¶ 42　　　　Our next level of inquiry requires an examination of the record to discern whether the presumptive value of this particular codefendant's trial was rebutted by the record. If so, we may affirm the trial court's dismissal of the amended postconviction petition.

¶ 43                        B. Application of Law to Defendant's Appeal

¶ 44        The record before this court reveals that the prosecution did not question whether the "dry run" of the evidence presented during a codefendant's trial would be inherently valuable to the preparation of a defense in this case. Nor did the State argue that the information contained in the transcript of the codefendant's trial was available to this defendant, free of charge, by other means. Consequently, the record does not rebut or negate the presumptive value of the codefendant's trial transcript as a necessary tool for the preparation of a defense.

¶ 45        The record demonstrates that the trial court did not deny defendant's request for a free transcript because it was untimely, lacked presumptive value to the defense, or could be obtained free of charge elsewhere. Instead, the court appeared to believe that the case law established that an indigent but *pro se* defendant would never be entitled to free access to a transcript of a prior proceeding. The trial court observed, "As it exists right now you do not have a right to them for free. You don't. You didn't want the Public Defender's Office. Public Defender might have been able to obtain those [free transcripts] for you. You didn't want them to represent [you] ***. This is what happened."

¶ 46        Respectfully, the application of the two-factor *Britt* test is not limited to indigent defendants represented by court-appointed counsel. The *Britt* test equally applies to indigent persons proceeding *pro se*, as well as indigent persons with counsel. Therefore, we conclude the trial court's rationale was erroneous.

¶ 47                              C. Trial Prejudice

¶ 48        Having concluded in the analysis above that the trial court violated defendant's constitutional right to equal protection by denying him access to the codefendant's trial transcript, we now reach the dispositive issue in this appeal. The outcome of this appeal will be dictated by

the following issue: whether defendant received ineffective assistance of counsel because "the result of the proceeding would have been different" if not for counsel's failure to preserve and then raise an issue on direct appeal, exposing the trial court's violation of the principles of equal protection.[2] *Strickland v. Washington*, 466 U.S. 668, 694 (1984); see *Easley*, 192 Ill. 2d at 329.

¶ 49    The underlying equal protection issue, forfeited due to the ineffective assistance of counsel, is of constitutional dimension. Our supreme court has stated, "The burden of proof is on the State to show beyond a reasonable doubt that the constitutional error did not affect the outcome of the proceeding." *People v. McClanahan*, 191 Ill. 2d 127, 139 (2000). In this appeal, the State takes on this burden by first acknowledging that there *are* inconsistencies in various witnesses' testimony between the two trials. Nonetheless, the State argues extensively—both in the State's briefs and in a petition for rehearing—that, even if the defendant would have had pretrial access to the codefendant's transcript and pointed out these admitted inconsistences to the jury, the outcome of the jury trial would have been the same. After chronicling a myriad of these admitted inconsistencies, the State asserts that the variations in the State's witnesses' testimony from trial to trial can be best described as minor or irrelevant. Even if we assume the State's position that impeachment of the State's witnesses, based on the inconsistencies in prior testimony, is correct, our analysis does not end here.

¶ 50    While the ability to impeach a witness with prior inconsistent testimony is one benefit of having pretrial access to a transcript of a prior proceeding, this is not the only benefit. In *Britt,* the court recognized at least two "ways" that pretrial access to the transcript of a prior proceeding

---

[2]Defendant also claims that posttrial counsel was ineffective for failing to preserve his equal protection claim for purposes of appeal. This alleged deficient performance on the part of posttrial counsel could only have prejudiced defendant if the failure to preserve prevented him from obtaining a reversal on appeal. Defendant's two claims are overlapping (see, *e.g.*, *People v. Simms*, 192 Ill. 2d 348, 397-98 (2000)), and he need only prevail on one of them to attain relief.

would benefit the defense, namely "as a discovery device in preparation for trial, and as a tool at the trial itself for the impeachment of prosecution witnesses." *Britt*, 404 U.S. at 228. Perhaps the *Britt* court listed these benefits in the order of their significance to the court. Regardless, a person is necessarily prejudiced by being less prepared for his trial than another person with adequate resources to purchase the transcript of a prior proceeding. This reality forms the basis of the underlying equal protection issue presented in this appeal. However, it is impossible to measure, with any degree of precision, the actual negative impact that a diminished level of defense preparation would have had on the defendant's jury trial. See *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006) (holding that error is deemed structural when it has " 'consequences that are necessarily unquantifiable and indeterminate' " (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 282 (1993))).

¶ 51        A structural error is a systemic error that serves to erode the integrity of the judicial process and undermine the fairness of a defendant's trial. *People v. Stoecker*, 2020 IL 124807, ¶ 23; *People v. Thompson*, 238 Ill. 2d 598, 609 (2010) ("An error is typically designated as structural only if it necessarily renders a criminal trial fundamentally unfair or an unreliable means of determining guilt or innocence."). The equal protection violation present in this record constitutes such an error. Simply stated, contrary to the State's position, a structural error is not susceptible to harmless error review. *Stoecker*, 2020 IL 124807, ¶ 23; *People v. Rivera*, 227 Ill. 2d 1, 19 (2007). For this reason, harmless error merits little, if any, discussion.

¶ 52        Our conclusions that defendant was denied equal protection by the court and thereafter did not receive effective assistance from posttrial counsel are based entirely on facts apparent from the face of this record, which renders a third-stage evidentiary hearing unnecessary. See *People v. Jimerson*, 166 Ill. 2d 211, 231 (1995). ("Ordinarily, at this juncture of the case, we

16

would remand for an evidentiary hearing on this issue. However, we find that an evidentiary hearing in this instance would be an unnecessary expenditure of judicial time and resources. The record before us provides us with ample evidence that the defendant's right to due process was violated ***."). Accordingly, we reverse the circuit court's order dismissing defendant's amended postconviction petition, vacate defendant's convictions, and remand the matter to the trial court for a new trial.

¶ 53                                      III. CONCLUSION

¶ 54         The judgment of the circuit court of Will County is reversed in part, vacated in part, and remanded for further proceedings.

¶ 55         Reversed in part, vacated in part, and remanded.

**No. 3-18-0551**

| | |
|---|---|
| **Cite as:** | *People v. Jenkins*, 2020 IL App (3d) 180551 |
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 11-CF-2122; the Hon. Sarah F. Jones, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Karalis, and Editha Rosario-Moore, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino and Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |